[No. 15869.   In Bank.—April 13, 1896.]

# IN THE MATTER OF THE ESTATE OF STEPHEN POW-ELL BURDICK, DECEASED.

ESTATES OF DECEASED PERSONS—SETTLEMENT OF ACCOUNT OF EXECUTOR—TRUST FUNDS—DISTRIBUTION—REVIEW ON APPEAL.—Upon an appeal by an executor from a decree of distribution, "except so much of said decree as settles the account of said executor," the settlement of the account which determines how much remains in the hands of the executor belonging to the estate cannot be considered upon the appeal, and the question whether the balance remaining in his hands consisted of trust funds not belonging to the estate must be considered as determined by the probate court, in the exercise of its jurisdiction, in the settlement of the account as between the executor and those claiming the estate, and any error in such determination could only be reviewed upon appeal from the decree settling the account, and cannot be reviewed merely on appeal from the decree of distribution.

ID.—JURISDICTION OF PROBATE COURT—ADVERSE CLAIM—STAY OF PROCEEDINGS.—The probate court has no jurisdiction to determine the rights of those claiming adversely to the estate; but if serious questions arise upon such claims, the court may delay the final decree until they can be determined in another forum.

ID.—DUTY OF EXECUTOR—REMEDY FOR IMPROPER CHARGE—COMPROMISE WITH TRUSTEES.—Where a serious question exists as to whether money in the hands of the executor belongs to the estate or to trustees, the executor should take steps to determine the right, and if he is improperly charged with funds not belonging to the estate, his only remedy is to appeal from the decree settling his account; but if he claims that the property is assets of the estate, it is his duty to get it for the estate, and he has no right to compromise the claim of the estate by consenting that the trustees shall have the money, provided they shall pay the debts and expenses of administration out of it; nor can he, after administering upon it, turn the surplus over to the trustees.

ID.—CONSTRUCTION OF CODES.—The codes are in pari materia, and must be construed as one.

ID.—INTEREST OF WIFE IN COMMUNITY PROPERTY.—The legal title to the community property is in the husband, and the wife has no right or title to any specific property, but only what may remain upon a dissolution of the community, otherwise than by her own death, and this interest cannot be classified as any species of estate known to the law.

ID.—ADMINISTRATION OF COMMUNITY PROPERTY—DISTRIBUTION TO WIFE—SUCCESSION—JURISDICTION.—The probate court has jurisdiction to administer upon the community property, as part of the estate of the husband, and the wife takes her interest in such property by way of succession from the husband, and through distribution of his estate.

ID.—APPEAL BY TRUSTEES—DISMISSAL.—Trustees who claim funds in the hands of the executor adversely to the estate, who have not presented any claim against the estate, are not parties aggrieved by a decree distributing the funds to the heir.

ID.—REFUSAL TO POSTPONE DISTRIBUTION—NONAPPEALABLE ORDER.—An
order refusing to suspend or postpone a decree of final distribution is
not appealable.

APPEALS from a decree of final distribution, from an
order refusing to suspend the decree of distribution, and
from an order denying a motion for distribution to
trustees. JOHN ELLSWORTH, Judge.

The facts are stated in the opinion of the court.

*J. H. Craddock,* for Arthur W. Burdick, and A. M.
Sutton, surviving trustees, and Arthur W. Burdick in
his own right, Appellants.

It was both the contractual and legal duty of the ex-
ecutor to return to the trustees the residue of the trust
funds in his hands after settlement of his account, with-
out any order of the court. (1 Story's Equity Jurispru-
dence, secs. 533, 534; Perry on Trusts, secs. 15, 346;
*Trecothick* v. *Austin,* 4 Mason, 16; *Attorney General* v.
*Brigham,* 142 Mass. 248; *Lathrop* v. *Bampton,* 31 Cal.
25; 89 Am. Dec. 141; *Pfister* v. *Wade,* 56 Cal. 43; 3
Pomeroy's Equity Jurisprudence, secs. 1322–27.) The
court having obtained jurisdiction of the fund for the
purposes expressed in the stipulation, and these pur-
poses having been fully subserved, its only remaining
duty in the premises was to direct the return of the res-
idue to the trustees in accordance with the stipulation,
as "the persons entitled thereto," not as distributive
assets of the estate, but as trust funds coming to its
jurisdiction earmarked with the character of a trust.
(*In re Haas,* 97 Cal. 232, 235.) On distribution the
probate court must, of necessity, examine into the title
to the extent of ascertaining in whom the *prima facie*
legal title is vested. (Code Civ. Proc., sec. 1665; *Estate
of Burton,* 64 Cal. 428.) The court should, at least, have
suspended its decree of final distribution until such rea-
sonable time as that the title to the residue of the funds
in the hands of the executor could be tried and deter-
mined in a court of competent jurisdiction, "care being

exercised that all parties interested should be fairly and fully represented at the trial." (*In re Haas, supra.*)

*R. S. Gray*, for Appellant Charles N. Fox, Executor.

Distribution cannot be made to persons claiming adversely to the estate. The question of title must be determined by action on behalf of or against the executor. The estate as distributed must go to the heirs or legatees or devisees, or some of them, or those holding under them, and the decree is only conclusive as to the rights of the heirs, legatees, or devisees, as such, and, as to them, subject only to be set aside, modified, or reversed on appeal. (*In re Rowland*, 74 Cal. 525; 5 Am. St. Rep. 464; *Chever* v. *Ching Hong Poy*, 82 Cal. 71.) Surviving spouse claiming alleged community property does not claim under or through the estate, but adversely thereto. Even in a proceeding regularly taken under section 1664 of the Code of Civil Procedure, the court would have no jurisdiction to determine a question of title as against one claiming adversely to the estate. (*Chever* v. *Ching Hong Poy, supra; In re Burton*, 93 Cal. 461; *Theller* v. *Such*, 57 Cal. 447; *Bath* v. *Valdez*, 70 Cal. 350; *Barnard* v. *Wilson*, 74 Cal. 512.) The alleged title of Alice H. Burdick and of the trustees were each of them adverse to the title of the deceased, and neither was within the jurisdiction of the superior court sitting in probate. (*In re Haas*, 97 Cal. 232.) If the executor has come into possession of the trust fund, or its substitute, so that the same can be identified, he can be held to account, and charged as a trustee, and the relationship of trustee will be added to that of executor. (*Lathrop* v. *Bampton*, 31 Cal. 17; 89 Am. Dec. 141.)

*Rodgers & Paterson, amici curiæ.*

Sections 1383 to 1400 of the Civil Code do not apply to the community property. The wife does not acquire her right of absolute property in one-half of the community property, upon the death of the husband, by

inheritance. (Civ. Code, secs. 172, 1402.) The expression, "the property of one who dies without disposing of it by will," assumes imperatively that the property referred to is property which he might have disposed of by will. (Civ. Code, secs. 1383, 1384, 1386.)

Temple, J.—December 12, 1892, the executor of the above estate filed his final account, and prayed for a settlement thereof, and for a distribution. The bill of exceptions stated "that by said final account it appeared that, after payment in full of all claims against the said deceased and said estate, the expenses of the last sickness and all funeral charges, and all accrued expenses and charges of the administration of said estate, there remained in the hands of said executor a balance in money of eighteen hundred and fifty-five dollars and forty-one cents, from which said executor asked to be allowed a reasonable attorney's fee, to be fixed by the court, together with such further expenses of administration as might thereafter accrue, and that the balance be distributed to the parties entitled thereto." The bill of exceptions then proceeds to give an extract from the petition accompanying the final account, in which, among other things, it is stated, in substance, that the executor found a deposit in a certain bank to the credit of Stephen Powell Burdick, as attorney, five thousand dollars of which was claimed by Arthur W. Burdick and A. M. Sutton, as trustees; that the bank, upon demand, refused to pay the same to the executor; that thereafter the claimants executed a certain paper, the contents of which are given, and then the executor was permitted to take the money. A decree was entered settling the final accounts of the executor, and finding that he had in his hands, subject to distribution, the sum of sixteen hundred and fifty-seven dollars and ninety-four cents. A decree was thereupon entered distributing said money as community property, one-half to Alice H. Burdick, widow of the deceased, and one-half to Arthur W. Burdick, who was sole legatee of deceased;

or, rather, at the request of said Arthur W. Burdick, to certain trustees for his benefit.

Appeals are taken from the decree by the executor, by Burdick and Sutton, as trustees, and by A. W. Burdick individually.

The executor appeals, as he states in his notice, from the whole of the decree, "except so much of said decree as settles the account of said executor, from which last-named portion he does not appeal."

The claim of the trustees to the five thousand dollars was set out by the executor in the petition accompanying his final account, but, so far as the bill of exceptions shows, no action was asked in regard thereto. But if action had been solicited in regard to it, I do not see how it could affect the matter here, for the executor has not appealed from the decree which settles his final account and determines how much remains in the hands of the executor belonging to the estate. This determination was clearly within the jurisdiction of the court. That decree is not before us on this appeal, and whatever errors we may suppose were committed by the probate court in reaching the conclusion, we cannot interfere with it. To attempt to do so would be an arbitrary proceeding without authority.

The probate court has jurisdiction as between the executor and those claiming the estate to determine what belongs to the estate. This is implied in the power to settle the final account, and, by its decree, determine what remains in the hands of the executor to be distributed. Still, since the probate court has no jurisdiction to determine the rights of those claiming adversely to the estate, if serious questions upon such claims arise, the duty of the court might be to delay the final decree until such claims can be determined in another forum. Where there is in the hands of the executor money which the executor claims does not belong to the estate, he should himself take steps to test the right, if serious question exists; and, if he is improperly charged, his remedy is to appeal from the decree settling his

final account. I know of no other way in which it can
be reached. His counsel says the probate court ex-
ceeded its jurisdiction in determining that this money
belonged to the estate; I do not think so; but, if it did,
the decree affected by the error was the decree settling
the final account of the executor, and determining that
he had in his hands sixteen hundred dollars belonging
to the estate after full administration. Since we cannot
change or modify that decree on this appeal, no relief in
that direction can be afforded. If we could here de-
termine that the money belonged to the trustees, it
would only establish another claim against appellant.
It would not vacate the finding that he also had sixteen
hundred dollars belonging to the estate which must be
distributed to the heirs or legatees.

The executor had an opportunity to test the right of
the estate to the money in question. He claimed that
it was assets of the estate, and the trustees that it was
not. It was his duty, if he deemed his claim just, to
get it for the estate, and he had no right to compro-
mise the claim of the estate by consenting that the
trustees should have it, provided they would pay the
debts and the expenses of administration out of it. I
do not think such is really the effect or meaning of
the agreement of compromise. But such is the claim
of the trustees. Having been permitted to inventory
it as assets of the estate, and administer it as such, the
executor could not return the surplus to the trustees.
To do so would be to assume the responsibility of main-
taining the title of the trustees against the estate. The
executor was not at liberty to assume such a position.

But appellant contends that the claim of the wife to
a share of the funds, as community property, is a claim
adverse to the estate, and that the probate court has no
power to distribute her share of the community prop-
erty, since, as he claims, she does not take by succes-
sion, but as survivor of the community.

Counsel argue correctly that the probate court, in the
matter of the administration of estates, has jurisdiction

of the estates of dead men, and can distribute only to
heirs, devisees, or legatees, or to those claiming through
them. And the decree of distribution is conclusive only
as to the succession or testamentary rights. (*Chever* v.
*Ching Hong Poy*, 82 Cal. 68.) The probate court, there-
fore, has no jurisdiction or power to deal with the wife's
portion of the community property at all, unless she
takes upon the death of the husband as heir. It could
not, then, determine what is community property, or
what is separate property, and could not authorize a
valid sale of community property to pay debts. The
fact that the proposition is so novel and so startling
raises a very strong presumption against it. To hold
with the appellant would upset titles all over the state.
A proposition more destructive of property rights could
not be imagined. Fortunately, it has not sufficient
plausibility to excite alarm.

The estate of the wife in the community property is
a creature of the statute, and is, of course, just what the
statute has made it. It has always been pretty much
what it now is, though formerly, upon the dissolution
of the community by the death of the wife, one-half of
the property descended to her heirs. Even then, how-
ever, it was held that the title was in the husband, and
the wife's interest in it was a mere expectancy. In
*Packard* v. *Arellanes*, 17 Cal. 525, it was said: "It is true
the wife is a member of the community and entitled to
an equal share of the acquests and gains; but so long as
the community exists, her interest is a mere expectancy
and possesses none of the attributes of an estate, either
at law or in equity."

The legal title to the community property is in the
husband. He has the absolute dominion and control of
it, and the wife has no right or title of any kind in any
specific property, but a possible interest in whatever
remains upon a dissolution of the community otherwise
than by her own death. This cannot be classified as
any species of estate known to the law. (Civ. Code, sec.
700.) Part IV of the Civil Code treats of the acquisition

of property, and section 1000 defines five modes in which property is acquired: 1. Occupancy; 2. Accession; 3. Transfer; 4. Will; or 5. Succession. Each of these modes is treated under a title specifically devoted to the subject, laying down rules for the acquisition of property in the particular mode treated of. The last two relate to the acquisition of property from deceased owners. Title VI treats of the acquisition of such property through testamentary disposition. The next is title VII, which treats of succession. The first section under this title is section 1383: " Succession is the coming in of another to take the property of one who dies without disposing of it by will." The learned *amicus curiæ*, who, by permission, presented an argument upon this subject, argues from this section that only property which the deceased owner might have disposed of by will can be inherited. But this is an unauthorized addition to the statute. Property which belonged to a decedent which he could not dispose of by will is property not disposed of by will, and within the words of the statute. Suppose the previous provisions in regard to testamentary disposition of property had limited the right to one-half of a testator's estate, and this section had remained as it now is, would not the moiety, which he could not dispose of by will, pass by succession? Infants and insane people die owning property, and they cannot exercise the testamentary power. The section follows the provisions in regard to wills, and means that the only other mode of coming to the estate of a deceased owner is by succession—and must be construed as applying to all cases which the language is broad enough to cover.

Section 1400 provides that the preceding sections as to the inheritance of husband and wife from each other only apply to separate property. This clearly implies other succeeding sections which apply to property of husband and wife which is not their separate property. Otherwise, instead of "preceding sections," the language would have been "of this title." The next section gives the entire community property to the husband, on the

death of the wife, "without administration." What was the necessity of this provision "without administration," if it does not go by succession?

The following section, 1402, disposes of the community property upon the death of the husband. As to the disposition of one-half of it, no one disputes that it is succession; but the language is the same in regard to the moiety given to the wife. It "goes" to her just as it "goes" to the descendants. This section is referred to in section 1274 of the Civil Code, and it seems to be there expressly determined that both husband and wife take some interest in the community property by succession. All property "to which heirs, husband, widow, or next of kin might succeed might be disposed of by will, except as otherwise provided in sections 1401 and 1402." This is an express legislative declaration that the disposition of the community property made in sections 1401 and 1402 is succession. Another consideration makes this equally clear, so far as the succession of the wife is concerned. In section 1402 it is provided that upon the death of the husband her share is equally subject to his debts, the family allowance, and the charges and expenses of administration. In the Code of Civil Procedure ample provision is made for the payment of all these charges *from the estate of the deceased.* There is no provision for calling upon the widow to contribute. Estates composed of what was community property in whole or in part are certainly common. If it had not been intended that the entire community property should be administered as estate of the husband, so important a matter could not be overlooked. Yet the probate laws only authorize the administrator to take charge of the property of the deceased (Code Civ. Proc., secs. 1443, 1581), and the final settlement of the accounts of the administrator is conclusive only upon those interested in the estate, and the decree of distribution only upon heirs, legatees, or devisees.

The codes are in *pari materia* and must be construed as one. This plain intent, that the title of the wife to

one-half of the community property shall be administered as part of the estate of the husband, added to the continuous and uniform practice of near half a century, must place this matter beyond all doubt.

The suggestion that the husband takes from the wife her share of the community property upon her death by succession may seem inconsistent with the proposition that during her life she had no estate of any kind in the property. That she had no estate in the community property—vested or contingent—was held by this court, when the law was that upon her death one-half of the community property was inherited by her next of kin. The change was made by amendments which are codified in sections 1401 and 1402, and which merely change the succession. It was competent for the legislature to provide the mode in which the wife's expectancy should pass to the husband. It might have done this by creating a right by survivorship as an incident to the estate, but it has done this by providing for a succession. Since the wife could not encumber it or contract with reference to it, there can be no essential difference.

A. W. Burdick and A. M. Sutton, as trustees, and A. W. Burdick, in his own right, have taken appeals from the entire decree. Obviously, the appeal taken by the trustees must be dismissed. They are not named in the will and claim no rights under it, and have presented no claim against the estate. They are not, and could not have been, aggrieved persons. The order refusing to postpone the decree of final distribution was not appealable.

The application was to "suspend the order of final distribution," because it was claimed that the money belonged to a trust fund. A. W. Burdick, as legatee under the will of Steven Powell Burdick, had no interest in such a contention, and, as legatee, was not injured. As trustee he cannot be heard here.

The court found the money in the hands of the executor to be community property, and distributed it ac-

cordingly. There is no evidence in the record which tends to show that the finding of the court was erroneous, and the bill does not show that it contains all the evidence which was before the probate court.

The appeal of the trustees is dismissed, and, as to the other appellants, the decree is affirmed.

McFarland, J., Van Fleet, J., and Henshaw, J., concurred.

Harrison, J., concurring.—The wife's interest in the community property upon the death of the husband has many incidents similar to those of an heir, but I do not think that, under the language and spirit of the laws of this state, she can be said to be his heir to her share of that property, or that her interest therein comes to her by virtue of a "succession" to the property of her husband. The property that is acquired by the labor of the wife during the marriage, equally with that acquired by the labor of the husband, becomes community property; and, although section 172 of the Civil Code gives to the husband the management and control of the community property—that acquired by her labor as well as that acquired by his—yet by the terms of the same section he cannot give away, or convey without valuable consideration, any portion of this property, unless she gives her written consent thereto. While a voluntary or fraudulent conveyance is binding upon his heirs, and, in the absence of creditors, cannot be questioned by the administrator of his estate, yet he cannot by such act deprive the wife of her share of the community property. Only one-half of the community property is subject to the testamentary disposition of the husband, and, if the bonds of their marriage are dissolved by a judicial decree which makes no mention of the property, the wife becomes the absolute owner of one-half thereof, as cotenant with the husband. (*De Godey* v. *Godey*, 39 Cal. 157.) It was said in this case: " The theory upon which the right of

the wife is founded is that the common property was ac-
quired by the joint efforts of the husband and wife, and
should be divided between them if the marriage tie is
dissolved either by the death of the husband or by the
decree of the court. Her mere right in the community
property is as well defined and ascertained in contem-
plation of law, even during the marriage, as is that of
the husband. It is true that the law confers upon the
latter the authority to manage and control it during the
existence of the marriage, and the power to sell it for
the benefit of the community, but not, as we have seen,
so as to defraud the community of it. In the case at
bar, then, the right of the respondent to a share of the
property in question, if it be proven to be community
property, is clear. It accrued to her as having been
acquired in part by her own efforts before the decree of
divorce was rendered. That decree as rendered did not
deprive her of it." Although this interest of the wife
in the community property may not fall within the
common-law definition of an "estate," it is not to be
classed as a "mere possibility" like the expectancy of
an heir. It is true that in *Van Maren* v. *Johnson,* 15
Cal. 311, it was, by way of illustration, termed a "mere
expectancy," and this illustration was again used in
*Packard* v. *Arellanes,* 17 Cal. 525; but, as was said in
*De Godey* v. *Godey, supra:* "While, perhaps, no other
*technical* designation would so nearly define its char-
acter, it is at the same time an interest so vested in her
as that the husband cannot deprive her of it by his will,
nor voluntarily alienate it for the mere purpose of di-
vesting her of her claims to it." That her interest in
the community property is more than a mere possibility
is also shown by section 167 of the Civil Code, by which
the community property is exempt from liability from
the contracts of the wife made after marriage, but it is
not exempted by the code from liability for her con-
tracts made before marriage.

It is a misapplication of terms to say that the
property which the wife has "acquired" during the

marriage by her skill or labor, and of which her husband had not in his lifetime any power of voluntary conveyance, except with her consent, or of testamentary disposition, is inherited from him; and to refer her rights in the community property to " succession," under the language of section 1383 of the Civil Code, begs the entire question. " Succession," by the terms of that section, can be applied only to a case where the property succeeded to belonged to the decedent, whereas the entire provisions of the Civil Code are at variance with treating the husband as the owner of the community property. If he were the owner he would have the absolute dominion over it, with the right to use it or dispose of it according to his pleasure (Civ. Code, sec. 679); but, as above seen, these attributes of ownership are denied him. Section 682 of the Civil Code specifies the community interest of husband and wife as one species of property which is *owned* by several persons. The necessary implication therefrom is that the husband and the wife are the " several persons" in whom is vested this ownership of the community property. This ownership is not absolute in either, but in each of them is qualified by reason of its being shared with the other. (Civ. Code, sec. 680.)

This interest of the surviving wife in the community property, instead of being adverse to the administrator of the estate of her husband, is subordinate thereto for all purposes of administration, and is subject to the supervision and control of the court in which the administration is pending. By section 1452 of the Code of Civil Procedure, the executor or administrator is entitled to the possession of all the real and personal estate of the decedent, and to receive the rents and profits of the real estate during the administration, and section 1402 of the Civil Code declares: " In case of the dissolution of the community by the death of the husband, the entire community property is equally subject to his debts, the family allowance, and the charges and expenses of administration." *Theller* v. *Such*, 57 Cal. 447, and kin-

dred cases have, therefore, no application, as the property involved in those cases was held not to be subject to the administration, or to the debts of the decedent. The husband has the sole management and control of the community property in his lifetime, and alone can render that property chargeable with debts. Upon his death the entire community property, as well as his separate property, is subject to the control of the court for the purposes of administration of his estate, and is taken into the possession and management of his administrator for these purposes, and at the close of the administration the wife receives at the hand of the court, in the same manner and at the same time as does the heir, her share of the community property—the one-half of the surplus after paying the debts and expenses of administration. She receives it, however, not as the heir of her husband, but in her own right as her half of the property which was acquired by herself and her husband during the marriage, but freed from all restrictions in its use and enjoyment, and with the same title as if the marriage had been dissolved by a decree of divorce. As the court which had control of the administration and of the community property for that purpose is also authorized to determine what charges, debts, and expenses are to be paid out of this property, and the amount thereof, it must follow that the judgment of that court determining the amount of the property which she is entitled to receive at the close of the administration is binding upon her, and may also be invoked by her as a determination of her right to the same. Whether this be called a decree of distribution, or a judgment or order fixing the amount or extent of her interest in the estate, and her right to receive the same from the administrator, is immaterial. It is the final determination of the court upon a subject within its jurisdiction, and is as binding upon her as if she had been specifically named in section 1666 of the Code of Civil Procedure. If a court has jurisdiction to take the management and control of property, and

to determine the amount of charges thereon and direct their payment out of the property, and return the surplus to the parties entitled thereto, its judgment in determining the amount of such surplus, and designating the persons to whom it is to be given, is necessarily conclusive upon them; and they take their portions of the surplus under and by virtue of the judgment, and not adversely thereto.

Upon the other questions discussed by Mr. Justice Temple in his opinion I concur with him, and I also concur in the judgment.

GAROUTTE, J., concurred.