[S. F. No. 12691. In Bank.—July 18, 1928.]

PATRICK J. McKAY, Respondent, v. HENERETTA LAURISTON et al., as Executrices, etc., et al., Appellants.

James J. Harrington for Appellants.

Richard FitzPatrick for Respondent.

Henry E. Monroe, Dunne, Dunne & Cook, Athearn, Chandler & Farmer and Frank R. Devlin, *Amici Curiae*.

CURTIS, J.—A rehearing of this case was granted for the reason that this court desired to consider, before the final determination of this appeal and in connection with it, the case of *Stewart* v. *Stewart*, then pending on its second appeal to this court, and in which many of the same questions were involved as are presented by the appeal in the

present proceeding. The decision of this court on the second appeal in the case of *Stewart* v. *Stewart, ante,* p. 546 [269 Pac. 439], has this day been filed.

In the consideration of the questions involved in the two cases and after a careful study of the arguments presented therein, we have come to the conclusion that our former opinion herein is a correct statement of the law applicable to the facts and subject matter of this action. We accordingly see no necessity of making any substantial change in our former opinion.

It is contended by at least one of the *amici curiae* appearing herein that the doctrine announced in *In re Rowland,* 74 Cal. 523 [5 Am. St. Rep. 464, 16 Pac. 315], was repudiated by this court in *In re Burdick,* 112 Cal. 387 [44 Pac. 734], in so far as it was held in *In re Rowland* that "the husband does not, upon the death of his wife, as to the community property, take by descent or succession, but holds the community property as though acquired by himself, and as if his deceased wife had never existed." The case of *In re Burdick, supra,* makes no reference to the case of *In re Rowland,* and while there is language to be found in *In re Burdick* which is directly contrary to the doctrine expressly enunciated in *In re Rowland,* we find that the question as to whether the husband succeeded to the community property in his own right, or by succession as heir of his wife, was not before the court in *In re Burdick.* The court in that case was dealing solely with the interest of the wife in the community property. The language, therefore, relied upon in *In re Burdick* as overruling *In re Rowland* was not necessary to the decision of any issue therein, and cannot, therefore, be regarded as declaratory of the law upon the subject matter in reference to which it was employed. We find that while the case of *In re Burdick* has frequently been cited and considered by the appellate courts of this state, it has never in any decision of which we have any knowledge been referred to as an authority in support of the claim that the husband upon the death of his wife succeeds to the community property as her heir. In 5 California Jurisprudence, page 364, we find the following statement of the law upon this question: "He (the husband) does not take the property by succession or descent, but holds it as owner, and, it has been said, as if his

wife had never existed." In support of this proposition of law there is cited *In re Rowland, supra,* and *Johnston* v. *San Francisco Sav: Union,* 75 Cal. 134 [7 Am. St. Rep. 129, 16 Pac. 753]. No reference is made to *In re Burdick, supra,* as laying down a contrary doctrine. Evidently the author of the subject of community property in this most useful and valuable compilation on the laws of California did not regard the decision in *In re Burdick* as repudiating or in any manner affecting the doctrine enunciated in *In re Rowland.* It is true that the legislature in 1923 by an amendment to the "Inheritance Tax Act" [Stats. 1917, p. 880], provided that the community property "which goes to the husband" upon the death of the wife should not be subject to an inheritance tax under the provisions of said act. It took similar action at its session held in 1925. [Stats. 1925, p. 471.] It is suggested by counsel that in the opinion of the legislature the property thus going to the husband on the death of his wife might have been liable for the payment of a tax as property to which the husband succeeded as heir of his wife, hence the adoption of this amendment for the purpose of relieving him from the payment of said tax. As early as 1905 [Stats. 1905, p. 341], the statutes of this state provided for the collection of an inheritance tax on all property which shall pass by will or by the intestate laws of this state, provided the value of the property passing exceeded certain specific exemptions mentioned in the statute. Under the statute enacted in 1905 it was held in *Estate of Moffitt,* 153 Cal. 359 [20 L. R. A. (N. S.) 207, 95 Pac. 653], that the surviving wife's share of the community property passed to her as the heir of her husband upon his death and was therefore liable to the payment of an inheritance tax. We know of no reported case, however, that has held the husband liable upon the death of the wife for the payment of an inheritance tax on the community property acquired prior to her death. We understand it has been the uniform practice of the officers of this state charged with the collection of this species of taxes, from the date of the enactment of the earliest statute imposing such taxes down to the present time, to regard the community property, after the death of the wife, as the absolute property of her husband, and that the same was not liable for any tax upon the death of the wife. Had the

husband succeeded upon the death of his wife to any interest in the community property as her heir, he would have, until the amendment of the statute in 1923, been liable for the payment of an inheritance tax thereon upon her death. The fact that this tax was never exacted from the husband can be accounted for only upon the theory that the administrative officers of this state, whose duty it was to enforce the payment of such taxes on all persons liable therefor, were during all these years of the opinion that the husband received no part of the community property from his wife as her heir, and was therefore not liable to the payment of any inheritance tax thereon. It is quite evident that neither these officers nor their legal advisers relied upon *In re Burdick, supra,* as establishing the law of this state that the husband succeeded to the community property as the heir of his wife. This fact may be of slight consequence in determining the legal effect of this decision, but coupled with the further fact that this decision has never been cited as an authority on this particular point in any case in any court of this state, leads to the conclusion that *In re Burdick* has never been regarded as an authority sustaining the doctrine that the husband succeeds to any of the community property upon the death of his wife as her heir. We are satisfied that the doctrine that the husband does not take any part of the community property as heir of his wife, which doctrine was approved in *In re Rowland, supra,* is the law of the state and has been for many years as to all community property acquired prior to or during the year 1918, the date the property herein involved was acquired.

The opinion heretofore rendered and which we hereby adopt and approve as the opinion of this court at this time is as follows:

"It appears by written stipulation of the parties hereto, and admissions made by the pleadings herein, that certain real property, described in the complaint and situated in the city and county of San Francisco, was acquired as community property by the plaintiff on the 9th day of November, 1918, at which time plaintiff and Hattie A. McKay were husband and wife. No change in the ownership of said real property was made up to the 16th day of August, 1926, on which date the said Hattie A. McKay died, leaving a last will and testament by the terms of which she sought

to devise an interest in said real property to her husband, the plaintiff herein, an undivided one-half, and to the defendants, Heneretta Lauriston and Mary Frances De Mello, the other undivided one-half thereof. Said defendants were named as executrices of said last will and testament, and in due time and after proceedings duly had in the probate court of the city and county of San Francisco, said will was admitted to probate and said Heneretta Lauriston and Mary Frances De Mello were appointed by said court executrices thereof. This action is brought by plaintiff to quiet his title to said real property, he claiming to be the sole owner of the whole thereof. The defendants, individually and as such executrices, assert that they are the owners by virtue of said last will and testament of an undivided one-half of the interest of the said Hattie A. McKay in said real property at the time of her death. The court gave judgment in favor of plaintiff, quieting his title to the whole of said real property against all claims of said defendants. From this judgment the defendants have appealed, and the same is before us upon the judgment roll in which is incorporated said stipulation of the parties above referred to. ■ The only question involved in this proceeding is whether Hattie A. McKay at the time of her death was the owner of any interest in said real property which she could devise by will and testament. It is conceded that if the said Hattie A. McKay had any interest in said real property at the time of her death, which was subject to her testamentary disposition, she acquired said interest and continued to retain the same by virtue of the fact that said real property became upon its purchase in November, 1918, community property and remained such during her lifetime, and that at the date of said purchase and up to the time of her death she was the wife of Patrick J. McKay, the respondent. At the time said real property was acquired by Patrick J. McKay, section 1401 of the Civil Code read as follows: 'Upon the death of the wife, the entire community property, without administration, belongs to the surviving husband, except such portion thereof as may have been set apart to her by judicial decree, for her support and maintenance, which portion is subject to her testamentary disposition, and in the absence of such disposition, goes to her descendants, or heirs, exclusive of her husband.'. In

1923 said section 1401 was amended and at the date of the death of said deceased, read as follows: 'Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of section one thousand four hundred two of this code.' There is no claim that said real property or any part thereof had ever been set apart to Hattie A. McKay by judicial decree or otherwise for her maintenance or support or for any purpose whatsoever. It is also apparent that the provisions of section 1402 of the Civil Code have no direct bearing upon the question of the ownership of Hattie A. McKay of an interest in said real property. At the time said real property was conveyed to plaintiff section 172a of the Civil Code read as follows: 'The husband has the management and control of the community real property, but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; provided, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to the community real property, to a lessee, purchaser or encumbrancer, in good faith without knowledge of the marriage relation shall be presumed to be valid; but no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate.' In the recent case of *Stewart* v. *Stewart*, 199 Cal. 318 [249 Pac. 197], this court after an exhaustive review of the decisions of this court, as well as those from other jurisdictions where the community property law prevails, considered and determined the right of the wife in community property acquired under the laws in force in this state immediately following the adoption of said section 172a and the amendment in the same year of section 172 of the Civil Code, relating, in its amended form, to community personal property. In that case we held that under the laws of this state as in force in the year 1918, relative to the rights of the wife in community property acquired while such laws were in effect, the wife had no present vested interest in the com-

munity property during the continuance of the marriage relation, except that she might by resort to appropriate judicial remedies. protect and safeguard the community property against the inconsiderate and fraudulent acts of the husband. In the course of the opinion in that case this court gave utterance to the following language: 'It is most earnestly contended by and on behalf of the respondent herein that the changes in the laws relating to community property effectuated by these two latter amendments were such as to create in the wife, if such had not theretofore existed, a vested interest in an undivided one-half of the community property immediately upon the acquisition of such property by the spouses or either of them, and to continue thereafter during the existence of the marriage relation. We are unable for the following reasons to give our approval to that contention. The legislature in framing these two amendments which, taken together, worked a revision of the former section 172 of the Civil Code did not state therein "in plain language," as it was pointed out in the second Spreckels case it might easily have done, "that the purpose of these amendments was to *vest* in the wife during the marriage a present interest or estate in the community property." The legislature did not even by said amendments to the Civil Code go so far as it had done in its revision of the inheritance tax law, coincidently adopted, so as to state that the "one-half of the community property which goes to the surviving wife on the death of the husband . . . shall not be deemed to pass to her as heir of her husband but shall . . . be deemed to go, pass or be transferred to her for valuable and adequate consideration." Had the legislature seen fit to so declare in the language employed by it in the coincident statute, no doubt could have existed as to its intent to work such a radical change in the former and long-established status as to render the interest of the wife in the community property thereafter to be acquired a present vested estate and interest therein from the date of its acquisition. The legislature did not do this nor anything like it. All that the legislature by these amendments did do or attempt to do was to cast about the interest of the wife in both the real and personal property of the community during the continued existence of the marriage relation added safeguards and protection against

the fraudulent or inconsiderate acts of the husband in the exercise of his control and dominion over these properties of the nature of those already provided for in earlier statutes and especially in and by the 1891 amendment to section 172 of the Civil 'Code. It follows, to our minds, irresistibly that the same reasoning which was applied to the earlier amendment of section 172 of the Civil Code equally applies to those changes in and revision thereof accomplished by the legislature in 1917. Additional force is, if needed, given to this conclusion when the particular provisions of section 172a as added to the code in that year are subjected to careful consideration; for it is made to therein appear that the sole lease, contract, mortgage or deed of the husband holding the record title to the community real property to a lessee, purchaser or encumbrancer in good faith, without knowledge of the marriage relation, shall be presumed to be valid and shall be so unless an action to avoid such instrument shall be commenced within one year from the recordation thereof. This provision renders the conveyance of the whole of the community real estate to a purchaser or encumbrancer thereof in good faith voidable but not void; a condition entirely inconsistent with the existence of a present and vested ownership in the wife of an undivided one-half of such property, and also with an intent on the part of the legislature by said amendments to effectuate such a radical change in a long-established rule of property. ■■■ We are, therefore, clearly of the opinion that the amendments to the Civil Code, adopted in 1917, did not operate to change such rule to the extent of creating in the wife a present vested interest in the property of the community during the continuance of the marriage relation.'

"The real property in controversy was acquired by the plaintiff under precisely the same legal conditions as was the real property involved in the case of *Stewart* v. *Stewart*. Accordingly, Mrs. McKay took no present interest therein which she could dispose of by last will and testament.

■■■ "It is claimed, however, by appellants that by the subsequent amendment of section 1401 of the Civil Code in 1923, which section was in force as thus amended at the date of the death of said Hattie A. McKay, she was given power to make testamentary disposition of one-half of the community property. There is no question but that by

said section 1401 of the Civil Code, as amended in 1923, the wife at her death has been given the power to dispose by will of whatever interest in community property she may have at the time of her death. We have already seen, however, that at the time said real property was acquired the provisions of the code then in force gave to the wife no right in the community property which she could dispose of by will. Could a subsequent statute or an amendment to the statute in force at the time the property was acquired invest the wife with a right which she did not possess prior to the enactment of said statute or amendment? This question has frequently been before the courts of this state and particularly in proceedings where the nature and extent of the interest of the wife in the community property of herself and husband have been the subject of controversy. It has been consistently and repeatedly held by this court, beginning with the case of *Spreckels* v. *Spreckels*, reported in 116 Cal. 339 [58 Am. St. Rep. 170, 36 L. R. A. 497, 48 Pac. 228], down to cases of recent determination that amendments whereby it was sought to lessen, enlarge or change in any manner the rights of the respective spouses in community property will not be given retroactive effect so as to affect the respective rights of the parties in community property acquired prior to the enactment of such amendments (*Spreckels* v. *Spreckels, supra; Estate of Frees,* 187 Cal. 150 [201 Pac. 112]; *Roberts* v. *Wehmeyer,* 191 Cal. 601 [218 Pac. 22]; *Shubert* v. *Lowe,* 193 Cal. 291 [223 Pac. 550]; *Estate of Drishaus,* 199 Cal. 369 [249 Pac. 515]; *Stewart* v. *Stewart, supra*).

"The decisions of the District Court of Appeal upon this question have been to the same effect (*Clavo* v. *Clavo,* 10 Cal. App. 447 [102 Pac. 556]; *Jacobs* v. *All Persons,* 12 Cal. App. 163 [106 Pac. 896]; *Scott* v. *Austin,* 57 Cal. App. 553 [207 Pac. 710]; *Scott* v. *Austin,* 58 Cal. App. 643 [209 Pac. 251]; *Copp* v. *Rives,* 62 Cal. App. 776 [217 Pac. 813]).

"At the time of the purchase of said real property the respondent took the absolute title thereto subject to whatever rights his wife had therein by virtue of the fact that the same was the community property of himself and his wife. This right of his wife was the right to receive upon the death of her husband, and subject to his debts, one-half of the community property. In other words, the wife was

given a right in the community property contingent upon her surviving her husband, and upon the happening of this contingency such right would have ripened into a vested interest in her in and to the said community property. Her death, however, prior to that of her husband, made the happening of this contingency impossible and thereupon the entire estate belonged to the husband without administration (Civ. Code, sec. 1401, prior to its amendment in 1923). These rights of the respective spouses in the community property attached to the property and were acquired by the parties at the time of the conveyance of the property, and, as we have seen, said rights cannot be impaired or destroyed by subsequent legislation. The courts, as above noted, have uniformly held that any legislation affecting the rights of the parties in such cases will not be given a retroactive construction, but that the law in force at the date of the acquisition of the property is determinative of the rights of the parties therein. It is plain, therefore, that the right of Hattie A. McKay in said real property at the time of her death must be determined by the law in force at the time said property was acquired by the respondent and herself, and that as the law then in effect gave her no right to make any testamentary disposition of any of said community property or any part thereof, the provision in her last will and testament by which she sought to devise to appellants an interest in said real property is ineffectual to vest title in appellants to any part or portion of said real property.

"Appellants further contend that the statute under which the husband succeeds to the community property is a statute of succession and inheritance, and therefore the law in effect at the death of the wife governs the disposition of the property of her estate. There is no question but that the right of an heir to inherit from his ancestor is a mere expectancy and is not deemed in any sense to be a vested interest in any property of his ancestor prior to the death of the latter. Statutes governing this right may be amended in any manner the legislature may see fit, without infringing upon or violating any vested right of the heir. It is equally well settled that the statutes governing the right of inheritance in force at the time of death control the disposition of property left by an intestate. Did

the community property acquired by McKay in 1918, upon the death of Mrs. McKay, become the property of respondent by descent and inheritance, or was he the sole owner thereof at all times since its purchase, subject to a half interest therein in his wife, in case she survived him? If a wife had any interest in said real property which would, upon her death, descend to her husband as her heir, then the husband would take the same by descent and inheritance, and the law in force at the time of her death would govern. The decisions of this court, however, have been to the effect that the husband does not, upon the death of the wife, succeed to the community property by descent or succession. This was definitely decided in the early case of *In re Rowland,* 74 Cal. 523 [5 Am. St. Rep. 464, 16 Pac. 315], in which case this court employed the following significant language: 'The *estate in expectancy* of the wife in the community property is dependent upon her survivorship and in the event of her death before her husband it is deemed never to have existed. If we are correct in this the husband does not, upon the death of his wife, as to the community property, take by descent or succession, but holds the community property as though acquired by himself, and as if his deceased wife had never existed.' While *In re Rowland* and many of the later cases enunciating this same doctrine were decided by this court in construing the sections of the code prior to the amended form in which they were in force in 1918, at the time the McKay property was acquired, yet in more recent decisions, and particularly in *Stewart* v. *Stewart, supra,* the same doctrine has been adhered to as was enunciated in the earlier cases. We quote again from the Stewart case 'We are, therefore, clearly of the opinion that the amendments to the Civil Code, adopted in 1917, did not operate to change such rule to the extent of creating in the wife a present vested interest in the property of the community during the continuance of the marriage relation.'

"Therefore, if, under the law of this state as it stood after the various amendments up to and including those enacted in 1917, the wife had no vested interest in the community property during the continuance of the marriage relation, and upon her death her mere expectancy or inchoate interest therein ceased and terminated, after her

death there was no property, nor any interest in any property, to which either the husband or any other person could succeed to by descent or succession or by any other means or method. Accordingly, it must be held that the respondent did not, upon the death of his wife, take interest in the community property by descent or succession. On the other hand, it is plain that whatever interest the wife had in said community property ceased and terminated at her death and thereupon the husband was the sole owner of said community property. The contention, therefore, of appellant that the law in force at the death of Mrs. McKay controls the descent and disposition of said community property cannot be sustained for the conclusive reason that the husband took no interest in said property by descent or succession. On the other hand, whatever interest the parties had in said property became fixed and determined by the law in force at the time said property was acquired by them; their rights therein thus acquired could not be diminished, enlarged or in any way affected by subsequent legislation; and as said property at the time it was acquired by Mr. and Mrs. McKay became their community property, upon the death of Mrs. McKay said property in its entirety belonged to McKay without administration. It follows, therefore, that the plaintiff was, at the commencement of ·this action, the sole owner of said real property, and that the judgment should be affirmed.''

It is so ordered.

Richards, J., Waste, C. J., Seawell, J., Shenk, J., and Tyler, J., *pro tem.*, concurred.