[Civ. No. 8983. First Appellate District, Division One.—March 12, 1934.]

RAY L. RILEY, as Controller, etc., Appellant, v. LILLIAN J. GORDON et al., Respondents.

David Tannenbaum, Donald R. Peck and W. H. H. Gentry for Appellant.

George I. Devor for Respondents.

THE COURT.—On February 14, 1930, James L. Gordon and Lillian J. Gordon, his wife, with the Farmers' and Merchants' National Bank of Los Angeles, a corporation, executed a declaration of trust by which certain community personal property, acquired by the Gordons previous to the enactment in 1927 of section 161a of the Civil Code, was transferred to the bank as trustee, the spouses reserving to themselves the income therefrom during their joint lives. The trust was revocable during the lives of both spouses, but became irrevocable upon the death of either, in which event the survivor was given a life estate in the *corpus* of the trust, and upon the death of the survivor the trust was to terminate, and the *corpus* distributed one-half to designated organizations and persons, among whom are the relatives of James L. Gordon, and one-half to designated organizations and persons, among whom are relatives of Lillian J. Gordon but strangers in blood to James L. Gordon.

The latter died on October 11, 1930. The State Controller then filed a petition for the determination, under the provisions of section 17 of the Inheritance Tax Act, of the amount of inheritance tax due by reason of the transfer. The referee filed a report, in which he found that the transfer was a taxable transfer by the husband; that Mrs. Gordon had a life estate in the *corpus* of the trust, which interest was exempt from tax; and that the remainder was divisible into two equal parts, one portion being taxable to organizations and persons, among whom are the relatives of decedent, and the other taxable to organizations and persons, among

whom are relatives of Mrs. Gordon but strangers in blood to decedent. Subsequently objections to the report were filed, by which it was urged that the portion of the trust property passing to the group last mentioned was not taxable upon the death of James L. Gordon and becomes taxable only upon the death of Mrs. Gordon; or, if now taxable, the persons taking this portion of the trust property should be taxed according to their relationship to Mrs. Gordon and not as strangers in blood.

The objections were sustained. The court found that the property transferred was community property acquired by the spouses prior to 1927; that the transfer was made without valuable or adequate consideration, and as to decedent was made by him in contemplation of death. It determined that the one-half of the trust estate passing to the group among whom are the relatives of decedent is now taxable, and judgment was entered fixing the tax upon this portion of the estate alone.

The Controller, who has appealed therefrom, contends that in view of the facts the transfer was taxable in its entirety upon the death of Gordon.

The interest of the wife in community property has been declared to be a more definite and present interest than that of an ordinary heir (*Stewart* v. *Stewart,* 199 Cal. 318 [249 Pac. 197, 206]); but it has been held that the title to such property vests in the husband (*McKay* v. *Lauriston,* 204 Cal. 557 [269 Pac. 519], and cases cited). The courts have so far failed to define the nature of the wife's interest, or to adopt a term descriptive of the powers which she may exercise in regard to such property; but it was held in the following cases that the amendments of 1923 to sections 1401 and 1402 of the Civil Code do not purport to fix or define the interests of the spouses in community property during their lives: *Estate of Phillips,* 203 Cal. 106 [263 Pac. 1017]; *Trimble* v. *Trimble,* 219 Cal. 340 [26 Pac. (2d) 477.]. It is clear, however, from the decisions last cited that previous to 1927 at least there was no change in the rule that the title to community property was vested in the husband subject to the statutory restraints upon his power to alienate or encumber the same without his wife's consent, and the power given her to devise a portion thereof. Previous to 1923 she was not empowered to dispose of any of such prop-

erty; but by the amendments last mentioned she was given testamentary power over a portion, and it was not until the adoption in 1927 of section 161a of the Civil Code that her interest therein was declared to be a present existing and equal interest, subject to the management and control of her husband as provided in sections 172 and 172a of the Civil Code. These enactments have been held to apply only to property subsequently acquired (*McKay* v. *Lauriston, supra*). It was also held in *Stewart* v. *Stewart, supra,* that said sections 172 and 172a of the Civil Code adopted in 1917 did not have the effect of creating in the wife a vested interest in community property, for, as the court said: "All that the legislature by these amendments did or attempted to do was to cast about the interest of the wife in both real and personal property of the community during the continued existence of the marital relation added safeguards and protection against fraudulent or inconsiderate acts of the husband . . . " (See, also, *McKay* v. *Lauriston, supra.*) What was there said applies with equal force to the proviso added to the latter section in 1925 (Stats. 1925, p. 84); and when a conveyance by the husband in violation of these sections is set aside at the instance of the wife the title revests in the husband (*McDougald* v. *First Federal Trust Co.*, 186 Cal. 243 [199 Pac. 11]; *Lahaney* v. *Lahaney,* 208 Cal. 323 [281 Pac. 67]). The testamentary power given the wife by the amendment to section 1401 of the Civil Code is analogous to the ordinary power of appointment, with respect to which it has been held that it may be created by statute (Chapin on Express Trusts and Powers, sec. 552), and that it is not necessary that an estate vest in the donee of the power (49 Cor. Jur., Powers, sec. 1, p. 1248; 21 R. C. L., Powers, sec. 1, p. 773; *Thompson* v. *Pew,* 214 Mass. 520 [102 N. E. 122, 125], and that the appointee will then take title not from the donee of the power but from the one in whom the title is vested (*People* v. *Kaiser,* 306 Ill. 313 [137 N. E. 826]); also that the power if not otherwise restricted may be as effectually executed by will as by deed (49 Cor. Jur., Powers, sec. 114, p. 1285). But to whatever the wife's testamentary power may be likened it is plain from the decisions that as to community property acquired previous to 1927 her joinder in a deed thereof is in legal effect but an expression of her assent to the transfer by the husband

(*Roberts* v. *Wehmeyer*, 191 Cal. 605 [218 Pac. 22]). Nor, as urged by respondents, does *Lynch* v. *Lynch*, 207 Cal. 582 [279 Pac. 653], hold to the contrary. There the property conveyed by the wife was not community property, but, as the court held, had it been, her earlier deed would have carried the interest therein which she subsequently acquired from her husband, who died intestate. This, we think, was the effect of the transfer to the trustee in the present case. Furthermore, the remainders thereby created were vested though defeasible, and this vesting in interest constituted the succession. Consequently the taxable transfer occurred upon the creation of the trust and not upon decedent's death, although the market value thereof would be determined as of the date of death (*Estate of Murphy*, 182 Cal. 740 [190 Pac. 46]; *Riley* v. *Howard*, 193 Cal. 522 [226 Pac. 393]).

The court having found that the transfer was made by Gordon in contemplation of death and without a valuable or adequate consideration, the same would appear to be within the provisions of section 2 of the Inheritance Tax Act, which reads in part as follows: "A tax shall be and is hereby imposed upon the transfer of any property, real, personal or mixed, or of any interest therein or income therefrom, in trust or otherwise, to persons, institutions or corporations not hereinafter exempted, to be paid to the treasurer of the proper county as hereinafter directed, for the use of the state, said tax to be upon the market value of such property, at the rates hereinafter prescribed, and only upon the excess over the exemptions hereafter granted, in the following cases . . . (3) when the transfer is of property made by a resident, or by a nonresident when such nonresident's property is within this state, by deed, grant, bargain, sale, assignment or gift, made without an adequate consideration (i. e., a consideration equal in money or in money's worth to the full value of the property transferred), (a) in contemplation of the death of the grantor, vendor, assignor or donor, or (b) intended to take effect in possession or enjoyment at or after such death." In 1923, subdivision 2 of section 1 of the act was amended by the insertion of the following: "Provided that for the purpose of this act, upon the death of the husband one-half of the community property is taxable under the provisions of this act" (Stats.

1923, p. 693). Respondents claim that the proper interpretation of this provision requires the exemption of one-half of the trust estate notwithstanding that the property passed from the husband to others than his wife.

Before 1917 a widow received no community exemption. In that year subdivision 2 of section 1 of the Inheritance Tax Act was amended as follows: "provided that for the purpose of this act one-half of the community property which goes to the surviving wife upon the death of the husband under the provisions of section 1402 of the Civil Code shall not be deemed to pass to her as heir but shall for the purpose of this act be deemed to go, pass or be transferred to her for a valuable and adequate consideration, and her said one-half of the community shall not be subject to the provisions of this act; provided further, that in case of a transfer of community property from the husband to the wife within the meaning of subdivisions (3) or (5) of section 2 of this act one-half of the community property so transferred shall not be subject to the provisions of this act." This provision covered only community property passing under the intestacy section of the code; and the second proviso exempts but one-half of the community property transferred.

These provisions were re-enacted in 1921 and remain unchanged. The intestacy section referred to in these enactments is section 1402 of the Civil Code.

■ As stated, the provision in question was adopted in 1923. It is clear that this was made necessary by reason of the amendment in that year of sections 1401 and 1402 of the Civil Code. Previously the one-half of the community property passing to the widow in case of intestacy was exempt, and no tax was payable by the husband upon the death of his wife. Before 1923, section 1401 of the Civil Code provided that in case of the death of the wife the community property should belong to the husband; and section 1402 that upon his death one-half thereof should go to the surviving wife. By amendments in 1923 of these sections it was provided by section 1401 that upon the death of either spouse "one-half of the community property belongs to the surviving spouse"; and by section 1402 that property passing from the husband by reason of his death or testamentary disposition to the wife "is subject to administration,

his debts, family allowance and charges and expenses of administration". After these amendments the latter section no longer provided for the inheritance of the community property by the wife, this being covered by section 1401. At the same time the legislature adopted the provision here involved, and further enacted that "the one-half of the community property which passes to the surviving spouse under the provisions of section one thousand four hundred and one of the Civil Code and, in case of the death of the wife, the community interest which goes to her husband under the provisions of section one thousand four hundred and two of the Civil Code in the absence of her testamentary disposition thereof to another or others, shall not be deemed to pass to such surviving spouse as heir, but shall for the purpose of this act be deemed to pass or be transferred for a valuable consideration; and said one-half of the community property and the interest last mentioned going as aforesaid to the surviving husband shall not be subject to the provisions of this act". (Stats. 1923, p. 694.) It was also provided that these amendments "should become effective and in force contemporaneously with the taking effect of amendments to sections one thousand four hundred and one and one thousand four hundred and two of the Civil Code, which amendments were enacted at the forty-fifth session of the legislature of the State of California and known as chapter eighteen of the Statutes of 1923, and not otherwise". (Stats. 1923, p. 695.) Under the second proviso inserted in subdivision 2 of section 1 of the act in 1917 and 1921 quoted above—and which, as stated, remains unchanged—one-half of the property actually transferred to a spouse is exempt from taxation, but not one-half of all the community property without regard to the person to whom the transfer is made.

As held in *Estate of Parrott,* 199 Cal. 107 [248 Pac. 248], the act should receive a construction which will make its application reasonable. We agree with appellant that it cannot fairly be said to have been the legislative intention to extend the community exemption to others than the spouses; otherwise the statute would plainly have so declared.

We are satisfied that the purpose of the several enactments when read together was rather to harmonize the Inheritance

Tax Act with the provisions of sections 1401 and 1402 of the Civil Code, as the same were amended in 1923, and they reasonably bear this construction. The effect of this is to provide that at least one-half of the community property shall be taxable on the death of the husband.

 It is clear, we think, that the transaction in question was in effect the transfer by decedent of a life estate in the community property to his wife contingent upon her survivorship, and, with her consent, of vested though defeasible interest, in remainder, and that no title or estate passed from her to anyone. This being true, it was a transfer within subdivision 3 of section 2 of the act, and was taxable in its entirety to the husband's estate upon his death. Consequently no community exemption attached to the transfer to the beneficiaries other than the wife, and these beneficiaries should be taxed according to their relationships to decedent Gordon.

The order appealed from is reversed.