Edwin C. F. Knowles, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 91495.   Promulgated November 2, 1939.

*B. J. Feigenbaum, Esq.,* and *N. L. McLaren, C. P. A.,* for the petitioner.

*T. M. Mather, Esq.,* for the respondent.

OPINION.

HARRON: It is conceded by respondent that the stocks of the four corporations in question were community property. It follows that the income from dividends on the stocks was community income. The question is, whether all of the income from dividends paid on the stock of the California and Arizona corporations in 1934 and 1935 is taxable to petitioner, a husband, or is taxable one-half to petitioner and one-half to his wife, under the community property law of the State of California.

The particular question arises because of a change made in the community property law of California by enactment of section 161a of the Civil Code of California,[1] effective July 29, 1927. Prior to enactment of section 161a, it was the law in the State of California, perhaps peculiar to that state, that a husband was the sole owner of community property and the wife had no title or vested, one-half interest, but only a mere expectancy, as heir, if she survived him. *Stewart* v. *Stewart*, 269 Pac. 439. Giving recognition to the peculiarities of California community property law, the Supreme Court held, in 1926, that income of community property may be taxed wholly against the husband. *United States* v. *Robbins*, 269 U. S. 315.

The enactment of section 161a is regarded as expressing a legislative intent to change the theory of ownership in community property acquired after enactment of the statutory provision, and to afford the wife a one-half interest therein. See 22 California Law Review, 417; 7 So. California Law Review, 13; *Bank of America National Trust & Savings Association* v. *Mantz*, 49 Pac. (2d) 279, although the appellate courts of California have not yet passed on the effect of the enactment of section 161a on this point. At least, no decisions have been brought to our notice. However, the attitude of the Supreme Court of the United States, expressed in *United States* v. *Malcolm* (1931), 282 U. S. 792, and in cases cited therein, is highly significant. The Supreme Court in the *Malcolm* case recognized a proprietary vested interest in the wife (in California) in community income, by virtue of the provisions of section 161a, in community income earned by a husband after enactment in 1927 of the provision in the Civil Code, and held that under section 161a a wife had such an interest in the community income that she should separately report and pay tax on one-half of such income.

It has been stated by California courts, however, that whatever the effect of section 161a may be on the rights of the respective spouses

---

[1] Section 161a. INTERESTS IN COMMUNITY PROPERTY.

The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in community property.

in community property acquired subsequent to its effective date, July 29, 1927, the new section of the code can not relate back to or govern the ownership of property acquired prior to the effective date. *Stewart* v. *Stewart, supra*, p. 442; *McKay* v. *Lauriston*, 269 Pac. 519, 523; *Levell* v. *Metropolitan Life Insurance Co.*, 5 Pac. (2d) 430. See, also, *Hirsh* v. *United States*, 62 Fed. (2d) 128; certiorari denied, 289 U. S. 735; *Devlin* v. *Commissioner*, 82 Fed. (2d) 731.

It would appear to be the legislative intent that the effect of section 161a is limited to community property acquired after July 29, 1927, and is to give a wife a present, one-half interest in such property. It seems to be consistent with the view of the Supreme Court, expressed in the *Malcolm* case, that a wife should report and pay tax on one-half of income produced by community property acquired after July 29, 1927, the income acquired after July 29, 1927, being governed by the same rule applicable to other types of community income. See *Clara B. Parker, Executrix*, 31 B. T. A. 644, 656.

The question in this proceeding turns upon when the shares of stock in the Marsh & McLennan corporations were acquired. The respective rights of husband and wife in community property are determined by the law in force at the date of its acquisition. *Trimble* v. *Trimble*, 26 Pac. (2d) 477. Determination of the narrow question depends entirely upon construction of the agreements by and between petitioner and the Delaware corporation. Petitioner contends that on the crucial date, July 29, 1927, he had no enforceable right of any sort, under the agreement of December 31, 1926, other than a right to receive salary earned; that no interest in the stocks in question was acquired prior to July 29, 1927; that the interest in the stocks arose out of the 1928 agreement, rather than the 1926 agreement, because the second agreement was intended to expressly cancel the first agreement. Respondent contends that petitioner acquired inchoate and vested rights in the stock, on December 31, 1926, upon execution of the 1926 agreement. The argument is that the "date of acquisition" is when an equitable interest arises and not when legal title is transferred. Respondent contends, also, that the 1926 agreement was not canceled, as between petitioner and the Delaware corporation, by the 1928 agreement, but that the 1928 agreement supplemented and modified the 1926 agreement.

First, putting aside the argument that the 1926 agreement was canceled by the 1928 agreement, the question to be considered is when petitioner acquired the *initial right* to the stocks in question, particularly in the stocks in the California corporation and in the Arizona corporation.

The time when property is deemed by law to be acquired, as between husband and wife, is as of the time of the acquisition of the

*initial right.* See McKay, Community Property, 2d ed., par. 517, p. 352, where it is also stated that:

> * * * it is assumed the initial right of the series is of such character that it is recognized as valid in law or equity and is available against someone. *It must be more than a mere unenforceable claim.* [Italics ours.]

Also, in a broad sense, contractual obligations are property, and such property, as between husband and wife, is acquired as of the date when the obligation becomes binding. McKay, Community Property, 2d ed., pars. 531, 533, pp. 358, 359.

Under the 1926 agreement, the obligation to sell petitioner stock in the California corporation, only, moved from the Delaware corporation to petitioner, and was subject to two conditions precedent—(a) acquisition of ten shares of stock of the California corporation by the Delaware corporation, from Kinney; (b) petitioner, at such time, had to be in the employ of the California corporation. Unless and until both of these conditions precedent were met, there was no binding obligation on the Delaware corporation to sell ten shares of California corporation stock to petitioner and, certainly, no binding obligation on petitioner to buy such stock.

Turning then to the facts, it is clear that the obligation in the Delaware corporation to sell the California corporation stock to petitioner did not become binding upon it until December 31, 1927, on which date both the conditions precedent were met. On that date, petitioner was in the employ of the California corporation, and Kinney resigned and transferred the particular stock to the Delaware corporation.

It must be concluded, upon reference to the terms of the 1926 agreement alone, that prior to December 31, 1927, petitioner did not have an enforceable claim against the Delaware corporation for acquisition of the California corporation stock; that petitioner did acquire his *initial right* to the ten shares of California corporation stock on December 31, 1927, and not before, which was after the crucial date, July 29, 1927. It is so held.

It must also be concluded that, without any doubt whatever, petitioner did not, at any time, under the terms of the 1926 agreement, acquire any interest in shares of stock in the other Marsh & McLennan corporations in Arizona, Oregon, and Washington. Under the 1926 agreement, there were no obligations in the Delaware corporation to sell stock in any of these corporations to petitioner, and he was not obligated to buy any stock in these corporations. Without any question, and whether or not the 1928 agreement was supplemental to the 1926 agreement, or an entirely new agreement, petitioner acquired the initial interest in the stock of the Arizona, Oregon, and Washington corporations under the 1928 agreement and on January 1, 1928, and not before. It is so held.

Upon our conclusions and holdings made above, it is unnecessary to consider whether the 1926 agreement, as between petitioner and the Delaware corporation, was canceled by the 1928 agreement. However, we are of the opinion that the parties intended to rescind the 1926 agreement by the execution of the 1928 agreement. We are of the further opinion that the 1928 agreement was not an amendment of or supplement to the 1926 agreement, but was a new agreement, complete in itself, creating new rights and obligations as of January 1, 1928. See sections 1688 and 1699 of the Civil Code of California; *Boomer* v. *Muir*, 24 Pac. (2d) 570; *Early* v. *Forbes*, 43 Pac. (2d) 368.

Since, under our holdings above, the stock in the California and Arizona corporations was acquired subsequent to July 29, 1927, the effective date of section 161a of the Civil Code of California, petitioner's wife acquired a present one-half interest in the stocks. Consequently, the dividends paid on the stocks in 1934 and 1935 are taxable, one-half to petitioner and one-half to the wife of petitioner. *United States* v. *Malcolm, supra.* It is so held. Respondent erred in including the full amount of the dividends in petitioner's taxable income.

There is no deficiency for the year 1934. There will be a small deficiency for the year 1935 because of an uncontested addition to income in that year. Recomputation under Rule 50 is necessary.

*Decision will be entered under Rule 50.*