## MEAD v. WELCH, Collector of Internal Revenue.

### No. 4071.

District Court, S. D. California, Central Division.

March 11, 1936.

Claude I. Parker, Ralph W. Smith, and Ralph Kohlmeier, all of Los Angeles, Cal., for plaintiff.

Samuel W. McNabb, former U. S. Atty., Alva C. Baird, Harry Graham Balter, Ignatius F. Parker, Clyde Thomas, and Hugh L. Dickson, Asst. U. S. Attys., Peirson M. Hall, U. S. Atty., and Eugene Harpole, Sp. Atty. for Bureau of Internal Revenue, all of Los Angeles, Cal., for defendant.

McCORMICK, District Judge.

According to the briefs in this case, but two issues remain unsettled and undecided: First, whether or not the Commissioner of Internal Revenue erred by including in the gross estate of William Mead, deceased, the sum of $115,400 transferred by decedent to others under the "Mead 1926 Trust," and, second, whether or not the Commissioner of Internal Revenue erred by including in the gross estate and subject to tax the sum of $959,638.97, representing the alleged market value of a bequest in the will of William Mead to the "Mead Housing Trust."

By a written instrument executed December 22, 1926, denominated "Deed of Trust," William Mead, the deceased, and Nella Wilde Mead, husband and wife, created the trust that is the subject-matter of the first of the two questions for decision. The pertinent provisions of this trust instrument are:

"Fourth: From the net income received or derived from the trust estate and available for distribution hereunder, and if necessary from the principal, there shall be by the trustees, paid monthly to Ida M. Herman, Alice Hansborough, Dorothy Hansborough, Carrie M. Wyckoff, John Wilde, Lucina Wilde, Jessie Wilde Cooper, and Edith Wilde Parker, and to such other person or persons now living, other than the trustors or either of them, hereinafter called beneficiaries, for and during their respective lifetimes, or for such period less than the lifetime of any designated beneficiary, as to such beneficiary, such amounts as said trustors, by written instrument directed to said trustees, direct and appoint; no payment shall be made to any beneficiary except and only for the amounts and at the times and for the period set forth and directed in a written instrument executed by both trustors and filed with the trustees, which amounts and times and periods may be in like manner changed from time to time in the same manner by like written instrument. * * *

"Ninth: This trust shall ipso facto cease and terminate at the time of the demise of the last living of the beneficiaries, or at the time of the termination of the period of payment to the surviving beneficiary; on such termination, or upon its failure or termination for any cause or reason, or in any manner whatsoever, in whole or in part, the trustee shall then first fully pay from the income, and/or principal, of the trust estate, any and all inheritance tax, and/or taxes, estate and/or other taxes which may then or thereafter be required to be paid from said trust estate, and all accrued and accruing costs and expenses of the trust; as often and when this trust terminates, in whole or in part, as aforesaid, then the portion or whole or part of the trust estate as to which this trust is terminated as aforesaid, shall be by the trustees conveyed, assigned and delivered as follows, to-wit:

"(a) One-half to such person or persons, other than to or for the benefit of trustors, or either of them, in such proportion, manner and event, and for such uses and purposes, as said trustor, William Mead, may by duly executed written direction designate and appoint, and the other one-half to such person or persons, other than to or for the benefit of the trustors, or either of them, in such proportion, manner and event, and for such uses and purposes, as said trustor, Nella Wilde Mead, may by duly executed written direction designate and appoint.

"(b) Should both or either of said trustors fail to execute written direction in their lifetimes as aforesaid, and be deceased when this trust terminates as aforesaid, then the said one-half thereof subject to said written direction of said deceased trustor, to such person or persons in such proportion, manner and event, and for such uses and purposes, as such deceased trustor, may by his or her last will and testament designate and appoint.

"(c) Should trustors, or either of them, fail to exercise the powers of appointment as aforesaid, then the one-half subject to such written direction of said trustor so failing, to the heirs at law of such trustor

according to the law of succession of the State of California then in force."

This 1926 trust was operative during the lifetime of William Mead. He died November 23, 1927. On March 12, 1927, he made and executed an olographic will. It contains the following statements:

"4th I direct the trustees of the trust executed in December, 1926, by myself and wife to William Mead, Nella Wilde Mead and Edith Wilde Parker, as trustees to pay the amounts hereinafter named at the times specified to the following named persons, and to continue to pay the same for the period of their natural life; To my sisters Ida M. Herman, Carrie M. Wyckoff and Alice Hausborough and my niece Dorothy Hansborough each Three Hundred ($300.00) Dollars per month, payable monthly. To my nieces Helen Herman, Katherine Herman McLaughlin and my nephew Eugene J. Herman each One Hundred ($100.00) Dollars per month payable monthly, until January 1, 1937, and after January 1, 1937, each Three Hundred ($300.00) Dollars per month payable monthly; the sums above directed to be paid monthly are not in addition to the amounts being paid at my death to the said persons or any of them by said trust or any other provision made by me, but include the amounts then being so paid.

"I direct the trustees of said trust, at such time as they deem best, but within five years of my death to pay the sum of Five Thousand ($5,000.00) Dollars each to said Eugene J. Herman, Helen Herman, Katherine Herman McLaughlin, and Dorothy Hansborough. I further direct the trustees of said trust to pay all property in said trust subject to my will and written direction and not directed by me to be paid otherwise, to my said executrix and wife for the uses and purposes in this will expressed."

Section 302 (d) of the Revenue Act of 1926, 44 Stat. 71, 26 U.S.C.A. § 411 (d), which establishes and determines the method of ascertaining the value of the gross estate of a decedent for federal estate tax purposes, as far as applicable to our present inquiry, reads: "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death."

It is clear from the terms of the fourth and ninth paragraphs of the trust instrument that the enjoyment of beneficial interests in the trust estate resides and is retained in the trustors. They have reserved expressly the right and the power to change the beneficiaries and also the amounts and periods to which a beneficiary shall be entitled to share in the trust estate. Nothing could be more clearly expressed than the absolute control reserved by the trustors during their lifetimes as to whom, and in what amount, and for what times, persons might become beneficiaries of the bounty of the two persons who created the trust.

Not only does the certain wording of the trust instrument bring into effect section 302 (d) of the Revenue Act of 1926 so as to require the inclusion in the gross estate of William Mead, deceased, of the sums transferred by the decedent under the 1926 trust to others, but the Supreme Court, in Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 453, 77 L.Ed. 880, has definitely settled the requirement of including such transfers in the gross value of a decedent's estate under the statute in question in this matter. In that case the court said: "The net estate upon the transfer of which the tax is imposed is not limited to property that passes from decedent at death. Subdivision (d) requires to be included in the calculation all property previously transferred by decedent, the enjoyment of which remains at the time of his death subject to any change by the exertion of a power by himself alone or in conjunction with another. Petitioner argues that, as decedent was without power to revoke the transfers or to alter or modify the trusts in favor of himself or his estate, the property is not covered by subdivision (d). But the disjunctive use of the words 'alter,' 'modify,' and 'amend' negatives that contention. We find nothing in the context or in the policy evidenced by this and prior estate tax laws or in the legislative history of subdivision (d) to suggest that conjunctive use of these words was intended, or that 'alter' and 'modify' were used as equivalents of 'revoke,' or are to be understood in other than their usual

meanings. We need not consider whether every change, however slight or trivial, would be within the meaning of the clause. Here the donor retained until his death power enough to enable him to make a complete revision of all that he had done in respect of the creation of the trusts even to the extent of taking the property from the trustees and beneficiaries named and transferring it absolutely or in trust for the benefit of others. So far as concerns the tax here involved, there is no difference in principle between a transfer subject to such changes and one that is revocable. The transfers under consideration are undoubtedly covered by subdivision (d)."

The same application of the corresponding section of the Revenue Act of 1924 (26 U.S.C.A. § 411 note) has been made by the Court of Appeals of the District of Columbia in Dort v. Helvering, 63 App. D.C. 98, 69 F.(2d) 836, 840, in the following language: "The plain language of this subdivision makes its terms apply in the case of every trust where the right is reserved on the part of the grantor to affect the enjoyment of the property transferred by 'any change,' either by alteration, amendment, or revocation." See, also, Foster v. Commissioner, 31 B.T.A. 769.

■ Overpayment must appear before refund is authorized, and, as this case is in the nature of an action for money had and received, the taxpayer must show that the United States has money which belongs to him. Lewis v. Reynolds, 284 U.S. 281, 282, 52 S.Ct. 145, 76 L.Ed. 293. This does not appear, and accordingly the Commissioner did not err by including the $115,400 in the gross estate of William Mead, deceased.

■ The second question for decision is whether the alleged present value at the time of the death of William Mead of a certain contingent bequest that he made in his will to a charity described in the will as "Mead Housing Trust" is deductible under section 303 (a) (3) of the Revenue Act of 1926, 44 Stat. 72 (26 U.S.C.A. § 412 and note), and articles 44 and 47 of Regulations 70 promulgated pursuant to and as an aid to the construction and enforcement of said section of said Revenue Act. The section of the act in question reads: "Sec. 303. For the purpose of the tax the value of the net estate shall be determined—(a) in the case of a resident, by deducting from the value of the gross estate—* * * (3) the amount of all bequests, legacies, devises, or transfers * * * to a trustee or trustees * * * but only if such contributions or gifts are to be used by such trustee or trustees * * * exclusively for religious, * * * scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. The amount of the deduction under this paragraph for any transfer shall not exceed the value of the transferred property required to be included in the gross estate"; and the part of article 44, Regulations 70, that is pertinent to our present inquiry reads: "Where a trust is created for both a charitable and a private purpose deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable and hence severable from the interest in favor of the private use"; and article 47 of the same regulations is as follows: "Conditional Bequests.— Where the transfer is dependent upon the performance of some act or the happening of some event in order to become effective, it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed."

These regulations have the force of statutes, Tyson v. Commissioner (C.C.A.) 68 F.(2d) 584; and are proper aids of construction of tax and revenue acts of Congress, Skinner v. Eaton (C.C.A.) 45 F.(2d) 568; Tyson v. Commissioner, supra.

The terms of the will of William Mead that pertain to the matter under consideration are as follows: "I, William Mead, make this my last will and testament. 1st, I appoint my wife, Nella Wilde Mead, sole executrix hereof, without bond, and will and direct that there be paid and distributed to her all my property, real, personal, and mixed, for and during her natural life, and for her own use, with power to sell, convey, assign, transfer, collect, invest, and re-invest the same, or any part thereof, or the proceeds thereof, or any part thereof. 2nd, Of the property constituting my estate at her death, I will and direct that the sum of Two Hundred Thousand ($200,000.00) Dollars in money or property be transferred to the trust executed by myself and wife in December, 1926, to William Mead, Nella Wilde Mead, and Edith Wilde Parker, as trustees, the income on which may be used by said trust for the purposes of said trust and the principal

shall at the termination of said trust be transferred to the 'Mead Housing Trust' hereinafter described. 3rd, All the remaining property constituting my estate at her death I will and direct to be paid and distributed to the Security Trust & Savings Bank, a corporation of Los Angeles, California, and Edith Wilde Parker, Lucien Gray, Nathaniel P. Conrey, and Albert Lee Stephens as Trustees, in trust (said Bank being considered as one trustee) without bond, for the purpose of providing a fund or foundation devoted to charity, which may be known as the 'Mead Housing Trust' to improve the health, safety and welfare of the inhabitants of Los Angeles County, California, by providing homes on easy payments and without profit for wage earners, and people with small and moderate salaries, and business and professional people with small capital who might otherwise be unable to become home owners."

It has been held by the Supreme Court in Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667, that, where the value of a charitable bequest is uncertain and cannot be estimated by any known data, it is not deductible under a federal tax statute substantially analogous to section 303 (a) (3) of the Revenue Act of 1926.

Nevertheless it is earnestly argued by plaintiff that the evidence in this case shows that the value of the bequest to the "Mead Housing Trust" at the time of the death of the testator William Mead was not uncertain and that it can be estimated as of that time by known data that is established by the evidence and by resort to tables of mortality experience.

Reliance is placed upon Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S. Ct. 291, 73 L.Ed. 647, but that case is clearly distinguishable from the one at bar. In the Ithaca Case the court said: "The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion."

The restrictions upon Mrs. Mead, the plaintiff, which are contained in the will of Mr. Mead, are not so precise or stringent as those imposed upon Mrs. Stewart in the Ithaca Case, and, even if it be assumed that Mrs. Mead is invested with nothing more than a life estate in the property devised to her, she nevertheless has plenary and exclusive discretion as to its use and disposal during her lifetime, and is not circumscribed by any joint vestee or fiduciary in her sole control of the estate, as far as any part of it pertains to the "Housing Trust." This was not the situation of the widow in the Ithaca Case.

It is true that the evidence shows Mrs. Mead to be the owner in her own right of a large separate estate, the income from it being sufficient to meet her present living requirements, and that she is earnestly interested in carrying out the "Mead Housing Trust" idea expressed in the will of her deceased husband, but these facts are not sufficient, in the light of her broad and unrestricted right of possession and use of all of the property and her undefined and prospective life estate requirements, to enable any one to find in definite terms of money the value of the "Mead Housing Trust" at the death of William Mead. The value of the thing to be taxed, the "Mead Housing Trust," must be estimated as of that time. Ithaca Trust Co. v. United States, supra.

When consideration is given to the expectancy of Mrs. Mead at the time of Mr. Mead's death in 1927, which, according to the American Experience Table of Mortality, was 18.79 years, the uncertainty and conjectural aspect of estimating any then present value of the "Housing Trust" is strengthened. Moreover, it has been over eight years since the trust was created, but nothing of an active or operative character has occurred in it to date, and no possession of any property has been delivered or vested in the trustees. They have not yet commenced to function, and it is entirely speculative as to whether or not this laudable charity of Mr. Mead will ever become an existing organization to carry out the will of its creator. It is not improbable that Mrs. Mead may be disposed to use, or may deem it necessary to use, during her lifetime, the entire estate devised to her and of which she is invested by the will and by the decree of distribution in her husband's estate with sole and exclusive possession and control.

There is no immediate transfer of the property that may ultimately comprise the corpus of the "Mead Housing Trust" if, as, or when it comes into the possession of the trustees who might later receive it, subsequent to the death of Mrs. Mead.

These uncertainties and contingencies, in my opinion, operate under the Humes Case to prevent the deduction claimed by the plaintiff.

It is only by speculation and conjecture that any definite value for tax purposes can be placed upon the "Mead Housing Trust" as of the date of Mr. Mead's death, and, such being the case, no error was committed by the Commissioner in refusing the deduction.