ALICE A. BIGELOW, EXECUTRIX OF THE ESTATE OF HERBERT M. BIGELOW, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82659. Promulgated August 23, 1938.

*Thomas R. Dempsey, Esq., A. Calder Mackay, Esq., Arthur Mc-Gregor, Esq.,* and *James L. Patten, Esq.,* for the petitioner.

*L. H. Rushbrook, Esq.,* for the respondent.

OPINION.

MELLOTT: The Commissioner determined a deficiency in estate tax in the amount of $9,244.19. The petitioner alleges that she has overpaid the estate tax in the sum of $402.11. The proceeding was submitted upon the pleadings and a short stipulation of facts. The issue may be succinctly stated: Should all, or only 50 percent, of the property of the decedent acquired prior to May 17, 1929, be included in his gross estate?

The decedent, a resident of California, died testate April 24, 1933. His executrix, within the time prescribed by law, filed an estate tax return with the collector of internal revenue at Los Angeles, California. Therein she reported a gross estate of $142,970.36. The respondent made certain adjustments and corrections, which are not now in controversy. He also added to the gross estate $136,481.66.

The petition alleges that the executrix, in filing the estate tax return, "included therein one-half of the community property as part of the gross estate subject to Federal estate tax" and that the respondent erred in including the other half. In this connection an agreement executed by decedent and his wife on May 17, 1929, is relied upon, which is as follows:

THIS AGREEMENT, made this 17th day of May, 1929, between HERBERT M. BIGELOW, first party, and ALICE A. BIGELOW, second party, both residing at Los Angeles, California.

WITNESSETH, WHEREAS, the parties hereto intermarried on or about September 6, 1888, and since that time have been and now are husband and wife and living together as such; and

WHEREAS, said parties, since the date of their marriage have acquired certain property which by virtue of the laws of the State of California and/or written agreement between the parties hereto is the community property of the parties hereto; and the parties hereto are desirous that the rights and interests of the respective parties hereto in and to all their community property be expressly defined and established in accordance with the terms and provisions hereof;

Now, THEREFORE, in consideration of the love and affection which each of the parties hereto bears unto the other and of other good and valuable consideration moving from each of the parties unto the other, it is hereby agreed as follows:

1. That all property now owned by the first party shall be and the same is hereby declared to be community property of the parties hereto.

2. That the respective interests of the parties hereto in their community property during continuance of the marriage relation are and shall be present, existing and equal interests under the management and control of the husband, first party hereto, as is provided in Sections 172 and 172 (a) of the Civil Code of the State of California.

3. That this agreement is intended and shall be construed as defining the respective interests and rights of the parties hereto in and to all community property, and the rents, issues and profits thereof, heretofore or hereafter acquired by the parties hereto during the continuance of said marriage relation.

First party does hereby assign, transfer and convey unto second party such right, title and interest in and to said community property as may be necessary to carry into full force and effect the terms of this instrument.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands the day and year first above written.

[Signed] HERBERT M. BIGELOW
ALICE A. BIGELOW

At the hearing it was stated that the above instrument was similar in form to one executed by W. A. Sampson and his wife, the force

and effect of which was then under consideration by the United States District Court for the Southern District of California, Central Division. Since the filing of briefs herein the court has entered its decision in the *Sampson* case (*Sampson* v. *Welch*, 23 Fed. Supp. 271). Our attention was also called to a decision by the United States District Court for the Southern District of California, Central Division, entered July 10, 1937, in *Goodyear* v. *United States*. The last mentioned case is now pending on appeal to the Circuit Court of Appeals for the Ninth Circuit.

The *Goodyear* case, although the memorandum opinion does not clearly so indicate, apparently holds that an agreement somewhat similar to that executed by decedent and his wife, vested in the wife such an interest in the decedent's property as to require the exclusion from his gross estate of one-half of the property formerly owned by him. Such conclusion, however, is at variance with that reached by the court in the *Sampson* case, which is on all fours with the instant proceeding. Its discussion of the questions raised is quite complete and persuasive. It summed up its conclusions as follows:

1. As to community property of the Sampsons acquired before July 29, 1927: The agreement operated to bestow upon Mrs. Sampson such an interest therein as to permit the inclusion under Sections 302 (a) and (b) of only one-half of the property in this category in the gross estate of her deceased husband. The agreement was however such a transfer as to come within the terms of Sections 302 (c) and (d) and the property interest bestowed thereby on Mrs. Sampson was includible in Mr. Sampson's gross estate.

2. As to the separate property of William O. Sampson, acquired before December 28, 1930: The agreement operated to bestow upon Mrs. Sampson such an interest therein as to permit the inclusion under Sections 302 (a) and (b) of only one-half of the property in this category in the gross estate of her deceased husband. The agreement was however such a transfer as to come within the terms of Sections 302 (c) and (d) and the property interest bestowed thereby on Mrs. Sampson was includible in Mr. Sampson's gross estate.

3. As to real property owned in joint tenancy, acquired before May 23, 1929: The agreement operated to bestow upon Mrs. Sampson such an interest therein as to permit the inclusion under Sections 302 (a) and (b) of only one-half of the property in this category in the gross estate of her deceased husband. The agreement was not however such a transfer as to come within the terms of Sections 302 (c) and (d) and the property interest bestowed thereby on Mrs. Sampson was not includible in Mr. Sampson's gross estate.

4. As to community property acquired after July 29, 1927 but before May 23, 1929: Mrs. Sampson, by virtue of Section 161 (a) of the California Civil Code, enjoyed such an interest in property in this category as to permit the inclusion under either Sections 302 (a), (b), (c) or (d) of only one-half of such property in the gross estate of her deceased husband. As to property in this category the agreement did not operate as a transfer within the terms of Sections 302 (c) and (d).

5. As to community property acquired after May 23, 1929 but before Mr. Sampson's death on December 28, 1930: Mrs. Sampson, by virtue of Section 161 (a) of the California Civil Code, enjoyed such an interest in property in this category as to permit the inclusion under either Sections 302 (a), (b),

(c) or (d) of only one-half of such property in the gross estate of her deceased husband. As to property in this category the agreement did not operate as a transfer within the terms of Sections 302 (c) and (d).

The dates referred to in the above holding are (1) the date section 161 (a) of the California Civil Code[1] became effective (July 29, 1927); (2) the date the agreement between Sampson and his wife was executed (May 23, 1929); and (3) the date of the death of the decedent (December 28, 1930).

Inasmuch as no evidence was introduced in the instant proceeding to show that any property was acquired by the decedent, his wife, or the community subsequent to the execution of the agreement, and inasmuch as apparently none of the property was owned by the community or held in joint tenancy, tenancy in common, or tenancy by the entirety prior to the execution of the agreement, we are concerned only with the property which was owned by the decedent when the agreement was executed. It will be noted that the court in *Sampson* v. *Welch, supra,* held that such property, though not includible in the decedent's estate under sections 302 (a) or (b) of the Revenue Act of 1926, was includible in the gross estate under sections 302 (c) and (d). We show in the margin the sections referred to, as amended.[2]

We think the court's conclusion that such property should have been included in Sampson's gross estate is correct and that a similar holding should be made here. As pointed out by the court, the husband retained in himself the possession, management, and control of the property for his lifetime, withholding from the wife "precisely those fructifying attributes of ownership, which Congress felt should not be retained by the grantor, unless the transfer was to be considered as testamentary in character." Accordingly it held that the property was includible under section 302 (c), *supra,* as being an

---

[1] 161a. Interest in Community Property: The respective interests of the husband and wife in community property during the continuance of the marriage relation are present, existing and equal interests, under the management and control of the husband, as is provided in Sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in community property.

[2] SECTION 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. * * *

(a) To the extent of the interest therein of the decedent at the time of his death;

(b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy;

(c) To the extent of any interest therein of which decedent has at any time made a transfer, by trust or otherwise, in contemplation of, or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth * * *;

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by, the decedent alone or in conjunction with any person, to alter, amend or revoke, or where the decedent relinquishes any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth * * *.

interest "of which decedent has * * * made a transfer, * * * intended to take effect in possession or enjoyment at or after his death."

Respondent argues, with considerable force, that the property is taxable as a part of decedent's gross estate under section 302 (a), as being an "interest therein of the decedent at the time of his death." In this connection he points out that the tax is "measured by the value at death of the interest which is transferred" (*Reinecke* v. *Northern Trust Co.*, 278 U. S. 339)—the rights or interests that are cut off—the "economic benefits and burdens" which cease. He points out that the decedent, so long as he lived, possessed substantial rights and interests in the wife's share of the community, even though full effect be given to the agreement and to section 161 (a). Some of these were: management and control of the community property, absolute and exclusive power to dispose of the personalty, qualified power to dispose of the real estate, power to contract debts upon the wife's share, and the practical power to dissipate all of it. Notwithstanding the existence of such rights, however, the court concluded that the wife had "a legal and present share in the ownership [of the property], coexistent with and equal to the share belonging to her husband." That "such a one-half interest—even though undivided and essentially dissimilar from all recognized common law estates—cannot be ignored, or treated as if it were the husband's, when clearly it is not." It therefore held that it was not taxable as a part of the husband's estate under section 302 (a), *supra*.

The question admittedly is not free from doubt. It may be, as respondent contends, that the wife, so long as the husband lived, had a "mere contingent, conditional future interest created solely by statute." If so, then perhaps the property should have been included in the husband's gross estate under section 302 (a). But we are of the opinion that her interest—whatever it was—can not be so classified. It was sufficient to entitle her to make a separate return of her share of the income, *United States* v. *Malcolm*, 282 U. S. 792; *Poe* v. *Seaborn*, 282 U. S. 101, even though the legislature did not see fit to designate it a "vested" interest; and, as the court pointed out in *Sampson* v. *Welch*, *supra*, it is significant that, under section 201 of the Probate Code of California, "one-half of the community property does not go to the wife upon her husband's death, but belongs to her." It has been held that to be included in the gross estate of a decedent under section 302 (a) three conjunctive requirements must be present: (1) an interest of the decedent at the time of his death, (2) subject to the payment of administration and charges against his estate, (3) subject to distribution as a part of his estate. *Crooks* v. *Harrelson*, 282 U. S. 55; *United States* v. *Field*, 255 U. S. 257; *Hernandez* v. *Becker*, 54 Fed. (2d) 542. The second require-

ment is undoubtedly present in the instant proceeding; but the existence of the other two, and especially the third, is, to say the least, quite questionable. We are of the opinion, and hold, that the wife's share of the community property was not includible in the husband's estate under section 302 (a).

Respondent's contention that the interest of the wife is includible in the husband's gross estate under section 302 (b) as an interest created by statute in lieu of dower is, we think, untenable. This question was fully considered by the court in *Sampson* v. *Welch*, *supra*. Its discussion leaves little to be said. The conclusion reached accords with our views. Accordingly we pass this question without discussion.

Finally, says the respondent, even assuming that an irrevocable, vested legal title to her share in the property was transferred by the agreement to the wife, still it was includible in the gross estate of the husband because the enjoyment of it by the wife was subject, during the lifetime of the decedent, to changes through his exercise of the retained power to alter materially, or even revoke, the enjoyment of it by the wife. Thus, he argues, it is taxable in the decedent's gross estate under section 302 (d).

In *Sampson* v. *Welch*, *supra*, it was stated that, while the courts have not yet passed upon the question whether an agreement involving community property falls within section 302 (d), they had "dealt with situations closely analogous." The court then analyzed the holdings in *Porter* v. *Commissioner*, 288 U. S. 436; *Holderness* v. *Commissioner*, 86 Fed. (2d) 137; *Commissioner* v. *Chase National Bank*, 82 Fed. (2d) 157; *Mead* v. *Welch*, 13 Fed. Supp. 981; and *Frederick Foster et al., Executors*, 31 B. T. A. 769; adverted to the numerous rights retained by the decedent, most of which we have referred to above; and concluded that the transfer was clearly within the act.

We are of the opinion that the cited cases and the reasoning of the court justify the conclusion reached. There is no difference between the agreement before us and that considered by the court in the cited case. We are of the opinion and hold that the respondent did not err in including the property in the gross estate of the decedent.

*Judgment will be entered for the respondent.*