**UNITED STATES v. GOODYEAR.**
No. 8725.

Circuit Court of Appeals, Ninth Circuit.

Oct. 18, 1938.

STEPHENS, Circuit Judge, dissenting.

James W. Morris, Asst. Atty. Gen., Sewall Key, Norman D. Keller, James P. Garland, and Lester Gibson, Sp. Assts. to Atty. Gen., and Ben Harrison, U. S. Atty., and E. H. Mitchell and Alva C. Baird, Asst. U. S. Attys., all of Los Angeles, Cal., for the United States.

Dana Latham and George Bouchard, both of Los Angeles, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Refund of estate taxes paid the United States was obtained by the judgment appealed from.

Ida P. Goodyear and W. E. Goodyear were married in California on August 18, 1891. They were at that time, and continued to be thereafter, residents of California. They acquired certain community property while married prior to July 29, 1927. Since the wife had only an "expectancy" in community property prior to 1927 (Stewart v. Stewart, 204 Cal. 546, 269 P. 439), it was held that community income could not be divided between the spouses for income tax purposes. United States v. Robbins, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285. At that time California Civil Code § 172 provided that "The husband has the management and control of the community personal property, with like absolute power of disposition, other than testamentary, as he has of his separate estate" subject to certain exceptions. Likewise at that time, California Civil Code § 172a provided that "The husband has the management and control of the community real property, but the wife, either personally or by duly authorized agent, must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered" subject to certain exceptions.

Likewise it was held that all of the community property for estate tax purposes, must be included in the value of a decedent's estate. Wardell v. Blum, 9 Cir., 276 F. 226, certiorari denied 258 U.S. 617, 42 S.Ct. 271, 66 L.Ed. 793; Talcott v. United States, 9 Cir., 23 F.2d 897, certiorari denied 277 U.S. 604, 48 S.Ct. 601, 72 L.Ed. 1011; Title Insurance & Trust Co. v. Goodcell, 9 Cir., 60 F.2d 803, certiorari denied 288 U.S. 613, 53 S.Ct. 404, 77 L.Ed. 986.

In 1923 there was an amendment to the Civil Code, § 1401 (now § 201 of the Probate Code) provided that "Upon the death of either husband or wife, one-half of the

community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse" subject to certain exceptions.

On July 29, 1927, § 161a, an amendment to the Civil Code became effective. It provided: "The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in community property. * * *"

After that amendment, litigation ensued over the question as to whether the income of the community could then be divided for income tax purposes. The question was answered in the affirmative on January 19, 1931, in United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L. Ed. 714.

Ida P. Goodyear and W. E. Goodyear entered into an agreement as of January 1, 1931, on July 9, 1931. The instrument provided in part:

"Whereas, the parties hereto are the owners of certain personal and real property, hereinafter described, as community property, all of the same having been acquired by them after their marriage on the 18th day of August, 1891; and,

"Whereas, all of said property was acquired by the parties hereto previous to July 29, 1927, or from income from property acquired previous to July 29, 1927; and,

"Whereas, it is the desire of the party of the first part to vest, in the party of the second part, a present, existing and equal interest in such community property and in all property acquired by them from income derived therefrom, the same as if said property had been acquired by the parties hereto as community property after July 29, 1927;

"Now, Therefore, the said party of the first part, in consideration of the love and affection which he has and bears unto the said party of the second part, does hereby give, grant, convey and confirm unto the party of the second part such an interest in the personal and real property herein described and referred to as will vest in her, with the party of the first part, a present, existing and equal interest in said personal and real property.

"* * *

"It is not the intention of this instrument to create in the parties hereto a tenancy in common in said property to which reference is herein made, but rather to vest in the party of the second part such an interest in the community property as she would have at the present time were the property to be acquired now from earnings of either of the parties hereto accumulated or earned since July 29, 1927."

That instrument was acknowledged on July 9, 1931, and recorded in the proper county in California on the following day.

On September 3, 1933, W. E. Goodyear died in California. On October 2, 1933, Ida P. Goodyear was appointed executrix of his estate, qualified, and since has acted as such. On June 12, 1934, the executrix, hereafter called appellee, filed an estate tax return, including therein only one-half of the value of the community property, and on that day paid the amount of tax shown to be due by the return. The Commissioner of Internal Revenue audited the return, and determined that the entire value of the community property should have been included in the return. On December 21, 1935, appellee paid the additional tax and interest demanded, in the sum of $7,671.22.

On January 22, 1936, appellee filed a claim for refund, which was denied on April 10, 1936. On April 18, 1936, this action against appellant was commenced to recover the amount of the additional tax paid with interest. The trial court held that the agreement gave Ida P. Goodyear the same interest in the community property as she would have had if the property had been acquired after the effective date of § 161a of the Civil Code. Judgment was entered on July 21, 1937. This appeal followed.

The applicable statute is § 302 of the Revenue Act of 1926 (44 Stat. 9). The Act of March 3, 1931 (46 Stat. 1516) amended subdivision (c) of that section. In quoting that section the matter added to the amendment is shown in italics. Section 302 provides in part:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—* * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, *including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom;* except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"

First. Although it had been decided that local law was controlling in determining who owned community earnings with regard to income tax, the Supreme Court had not, until recently ruled with respect to estate taxes. In Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199, it was said that "state law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law".[1] In accordance with that rule, the Supreme Court had applied that rule, and held with respect to' ownership of property, and the extent thereof, that general law would apply, rather than local law, and had reached a result opposite to what it would have reached had local law been applied. See cases cited in Welch v. Kerckhoff, 9 Cir., 84 F.2d 295, 298, 106 A. L.R. 1434.

■ The primary question was, then, whether § 302 was to depend on ownership, as defined by local law. Construing that section, it was said in Porter v. Commissioner, 288 U.S. 436, 441, 53 S.Ct. 451, 452, 77 L.Ed. 880: "The net estate as

there used does not mean an amount to be ascertained as such under any general rule of law or under statutes governing the administration of estates, but is the gross estate as specifically defined in section 302 * * * less deductions permitted by section 303 * * *."

It is obvious that statutes relating to community property govern "the administration of estates" and therefore, under the language used, it would seem that such statutes would not be applicable. We so held in Bank of America Nat. T. & Sav. Ass'n v. Com'r of Int. Rev., 9 Cir., 90 F.2d 981, 983, saying that we believed local law "to be immaterial". Thereafter, that statement was said to be "inaccurate" and community property law was applied under § 302, in Lang v. Commissioner, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, May 16, 1938, the opinion making no explanation of, or reference to, Porter v. Commissioner, supra. In view of Lang v. Commissioner, supra, the present rule seems to be that community property law is applicable in determining the amount of the gross estate under § 302, and we consider the instant case on that assumption.

■ Second. Appellant contends that the agreement did not operate as a "transfer" because it "merely attempted to define a tenancy without creating one and did not establish an interest in and to property by any recognized conveyance". In view of the granting words, we think the agreement was sufficient in form to operate as a conveyance.

■ Appellant further contends that there was no transfer because decedent "gave up none of his statutory rights, powers or privileges with regard to community property acquired in California prior to 1927, and she by the same token gained no additional rights, powers or privileges in and to such property". We believe this contention cannot be sustained.

■ California Civil Code, § 158 provides that "Either husband or wife may enter into any engagement or transaction with the other * * * respecting property, which either might if unmarried * * *". Section 159 provides: "A husband and wife cannot, by any contract with each other, alter their legal relations,

---

[1] The effect of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, April 25, 1938 and Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L. Ed. 1290, May 2, 1938, if any, on this rule is yet to be determined.

except as to property * * *". Thus, it is apparent that husband and wife may make a valid contract with each other, and may alter their legal relations with respect to property. Here decedent granted a present and equal interest in the property to which his wife then became entitled by virtue of the grant. Her legal rights were changed from an "expectancy" to a present and equal interest in the community property. The grant took effect, we think, upon delivery of the grant by virtue of § 1054 of the Civil Code, which provides: "A grant takes effect, so as to vest the interest intended to be transferred, only upon its delivery by the grantor".

**Third.** Appellant further contends that even if the agreement did constitute a transfer, it was "intended to take effect in possession or enjoyment at or after death" and therefore the entire value should have been included in the gross estate pursuant to § 302(c), before amendment. Vesting of the interest, however, took place upon execution and delivery of the agreement, and was intended as such, and not at the death of the decedent. While such interest vested immediately, other rights, such as disposal, accrued to her upon the death of decedent. There is here no contention that such rights were sufficient to authorize taxation of the privilege of disposing of them. Compare Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; Gwinn v. Commissioner, 287 U.S. 224, 53 S.Ct. 157, 77 L.Ed. 270.

**Fourth.** Appellant further contends that decedent "retained for his life * * * the possession or enjoyment of * * * the property" and therefore the entire value should have been included in the gross estate under § 302(c) as amended. Eliminating redundant parts of the statute, we find that there must be included in the value of the gross estate "all property * * * To the extent of any interest therein of which the decedent has at any time made * * * a transfer under which the transferor has retained for his life * * * the possession or enjoyment of * * * the property". We think what decedent retained was his own interest. Both spouses had possession and enjoyment of the property and owned the income therefrom, although the property was subject to "management and control" by decedent. The terms "management and control" are not synonymous with "posses-sion and enjoyment". That one may manage and control property without either possession or enjoyment is illustrated by the situation where an agent manages real property for the owner. In such case although the agent may have absolute control in managing and renting the property and in collecting rents, the rents belong to the owner who enjoys them. We think that theoretically each spouse had possession and enjoyment of his particular interest. Decedent, therefore, did not possess and enjoy his wife's interest. If in controlling and managing the property, decedent transferred possession and enjoyment to a third person, the fruits received for such transfer, were then owned by both spouses. See the cases in the dissenting opinion in Bank of America Nat. T. & Sav. Ass'n v. Com'r of Int. Rev., supra, page 985.

**Fifth.** Appellant further contends that while the agreement is irrevocable, decedent could have used the property so as to "alter, amend or revoke" the effect of the agreement, and therefore the entire value should be included pursuant to § 302(d). We do not understand that decedent had such power, however. By Civil Code § 172, he could not make a gift of, or dispose of, the community personal property, except for a valuable consideration, without the written consent of the wife. Civil Code § 172a, quoted above, discloses that except for leases for less than a year, the wife is required to join in executing an instrument. If on disposal of either kind of property, consideration is received, then such consideration becomes community property. See the dissent in Bank of America Nat. T. & Sav. Ass'n v. Com'r of Int. Rev., supra, page 985.

**Sixth.** The remaining contention of appellant is that if only one-half of the community property is included, then only one-half of the community debts should be deducted. Section 303 of the act in question, 44 Stat. 72, permits deduction of "claims against the estate". Article 36 of Regulations 80, is applicable, and provides that there may be deducted amounts which "represent personal obligations of the decedent existing at the time of his death". It was stipulated by the parties that the deduction was "the amount of $5,696.91, representing 100% of the debts of said W. E. Goodyear at the date of his death". Since those debts were personal debts of

decedent, and not debts of the community, the deduction was properly. made.

Affirmed.

STEPHENS, Circuit Judge (dissenting.)

This is an appeal from a judgment of the United States District Court decreeing a refund of estate taxes paid the Collector of Internal Revenue for the Sixth District of California in 1934 and 1935 by Ida P. Goodyear, executrix of the estate of W. E. Goodyear, deceased.

The Commissioner of Internal Revenue determined that the value of all the community property owned by decedent at the date of his death was includable in decedent's gross estate for the purpose of Federal estate taxes, instead of one-half of such value as set out in taxpayer's return, and on this basis an additional tax over that paid upon the return, was assessed and collected, including interest, of $7,671.-22. A claim for refund of this additional tax was filed and rejected, and the taxpayer brought this action for the recovery of such additional tax assessed and collected. The District Court entered its judgment in favor of the taxpayer, and the United States appealed to this Court.

From August 19, 1891, until the death of W. E. Goodyear on September 3, 1933, the Goodyears were husband and wife and resided in the State of California.

The question at issue involves the effect of an agreement between the husband and the wife concerning their community property acquired between August 18, 1891, and July 29, 1927, upon the application of the estate tax provisions of the Revenue Act of 1926 to the estate of the husband. The facts of the case show that the agreement referred to was entered into July 9, 1931, duly authenticated, acknowledged by the parties thereto, and recorded. By its provisions the husband conveyed to the wife such an interest in the community property acquired prior to July 29, 1927, as would constitute in her with him "a present, existing and equal interest in such community property the same as if said property had been acquired by the parties hereto as community property after July 29, 1927." The broad question, then, is whether this agreement was effective to relieve the interest thereby conveyed to the wife from federal estate taxes upon the husband's death. The instrument to which reference has heretofore been made is throughout this opinion designated as the "agreement" and is set out in full in the margin.[1]

In this opinion local law has been deemed determinative as to the nature of the interest the husband and wife separate-

[1] "This agreement, made and entered into as of January 1, 1931, by and between W. E. Goodyear, also known as William E. Goodyear, of Somis, California, the party of the first part (husband of the party of the second part), and Ida P. Goodyear, of the same place, the party of the second part (wife of the party of the first part).

"Witnesseth:

"Whereas, the parties hereto are the owners of certain personal and real property, hereinafter described, as community property, all of the same having been acquired by them after their marriage on the 18th day of August, 1891; and,

"Whereas, all of said property was acquired by the parties hereto previous to July 29, 1927, or from income from property acquired previous to July 29, 1927; and,

"Whereas, it is the desire of the party of the first part to vest, in the party of the second part, a present, existing and equal interest in such community property and in all property acquired by them, from income derived therefrom, the same as if said property had been acquired by the parties hereto as community property after July 29, 1927;

"Now, therefore, the said party of the first part, in consideration of the love and affection which he has and bears unto the said party of the second part, does hereby give, grant, convey and confirm unto the party of the second part such an interest in the personal and real property herein described and referred to as will vest in her, with the party of the first part, a present, existing and equal interest in said personal and real property.

"And it is hereby agreed by and between the parties hereto that if any property shall be acquired by them in the future from income of property acquired since July 29, 1927, or from property acquired previous to such date, each of the parties hereto shall have a vested, present, existing and equal interest in and to all of the same as community property.

"It is not the intention of this instrument to create in the parties hereto a tenancy in common in said property to which reference is herein made, but rath-

ly and together may have in property involved in this action. Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199; Lang v. Commissioner, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331; Lang's Estate v. Commissioner, 9 Cir., 97 F.2d 867; Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; United States v. Robbins, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285.

The federal estate tax provisions of the Revenue Act of 1926, or so much thereof as are pertinent to this case, are as follows: Sec. 301(a), 44 Stat. 69: "In lieu of the tax imposed by Title III of the Revenue Act of 1924, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 303) is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment of this act, whether a resident or non-resident of the United States * * *."

There then follows the schedule of per centum at which estates of various net values shall be taxed.

Sec. 302: "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death;

"(b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy;

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *" 44 Stat. 70.

It would seem self-evident, in the absence of statutory provisions to the contrary, that the primary obligation to pay any property tax rests upon the owner of the property assessed. Thus the Supreme Court in Bender v. Pfaff, 282 U.S. 127, 131, 51 S.Ct. 64, 75 L.Ed. 252, in considering whether or not the husband and wife could legally file separate income tax returns, said: "If the test be, as we have held it is, *ownership of the community income,* this case is probably the strongest of those presented to us, in favor of the wife's ownership of one-half of that income." (Italics supplied.)

The court proceeded to hold that in Louisiana the wife had a one-half ownership in the community property and sustained the right of the wife to file her separate return as the basis for calculating her income tax. To the same effect in the State of Washington, Poe v. Seaborn, 282 U.S. 101, 109, 51 S.Ct. 58, 75 L.Ed. 239, wherein the court construing Sec. 210(a)

er to vest in the party of the second part such an interest in the community property as she would have at the present time were the property to be acquired now from earnings of either of the parties hereto accumulated or earned since July 29, 1927.

"Said real and personal property to which reference has herein been made, is particularly described as follows, to-wit:

"(Legal description of real property and specific description of various items of personal property omitted.)

"And all other real and personal property owned or possessed by the party of the first part at the time of the sign-

ing of this agreement, whether the same is herein particularly described or not.

"The party of the second part joins in the execution of these presents for the purpose of consenting to the foregoing grant, and as an acceptance of said interest in said property.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

"W. E. Goodyear, also
known as William E.
Goodyear        [Seal]
"Ida P. Goodyear        [Seal]
"(here follow the acknowledgment, dated July 9, 1931, and recordation, dated July 10th, 1931)"

and Sec. 211(a) of the Revenue Act of 1926, 44 Stat. 21, held that where the act lays a tax upon the net income "of" every individual, "The word 'of' denotes ownership." And so we find in Sec. 301(a) of the same Act which refers to an estate tax almost the same expression, "* * * a tax * * * is hereby imposed upon the transfer of the net estate *of* every decedent. * * *" It is then in order to determine, in the instant case, in whom the ownership of the community property lay immediately preceding the death of the husband.

Very early in the history of the State, the California Supreme Court held that the wife's interest in the community property was no more than the expectancy of an heir. Estate of Moffitt, 153 Cal. 359, 95 P. 653, 1025, 20 L.R.A.,N.S., 207. See, also, Packard v. Arellanes, 17 Cal. 525, 537. The court in the Packard Case, supra, speaking with approval of the holding in Van Maren v. Johnson, 15 Cal. 308, said, at page 538: "The wife has no voice in the management of these affairs, nor has she any vested or tangible interest in the community property. The title to such property rests in the husband, and for all practical purposes he is regarded by the law as the sole owner. It is true, the wife is a member of the community, and entitled to an equal share of the acquests and gains; but so long as the community exists her interest is a mere expectancy, and possesses none of the attributes of an *estate,* either at law or in equity." (Italics the court's).

The community property system prevailed in California at the time this State joined the Union. Historically it extends back into the Mexican and Spanish regimes of such State. This historic background continues to this day to wield an influence upon decisions of the courts of California.[2] The California community property system is, however, statutory. The California Constitution of 1849, Art. 11, sec. 14, provided that "* * * laws

shall be passed more clearly defining the rights of the wife, in relation as well to her separate property, as to that held in common with her husband." And in a schedule attached to this the following: "* * * All laws in force at the time of the adoption of this constitution and not inconsistent therewith, until altered or repealed by the legislature, shall continue as if the same had not been adopted." (Schedule, Sec. 1). The very first legislature obeyed the constitutional command and passed the first California community property law. Stats.1850, p. 254. While many changes have been made since this first statute, it fixed principles that persist to this date. The case of Stewart v. Stewart, 1926, 199 Cal. 318, 249 P. 197, reviews these statutes and the litigation concerning them down to the law as it affected community property acquired prior to 1918. The court in that case adhered to the long line of authorities holding that the husband was the owner of the community property. In its opinion, however, the court did say that "the interest of the wife in the property of the community * * * is, and has always been * * * a much more definite and present interest than is that of an ordinary heir." [page 207.] In the second opinion, Stewart v. Stewart, 204 Cal. 546, 269 P. 439, and in McKay v. Lauriston, 204 Cal. 557, 269 P. 519, the Supreme Court plainly adhered to the principle that the husband owned the community property. In 1921, this court in deciding the case of Wardell v. Blum, 9 Cir., 1921, 276 F. 226, had no state decision as to the effect of the California inheritance tax law of 1917 (Stats.1917, p. 880) upon the ownership of community property, and relying to some extent upon the expression "it is very plain that the wife has a greater interest than the mere possibility of an expectant heir" found in Arnett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 426, 55 L.Ed. 477, 36 L.R.A.,N.S., 1040[3] (cf. Roberts v. Wehmeyer, 191 Cal. 601, 218 P. 22), held that federal estate tax should

---

[2] For a good reference to the history of the community property system in California, and authoritative data, see Sampson v. Welch, D.C., 23 F.Supp. 271.

[3] In United States v. Robbins, supra, 46 S.Ct. 149, it is said "We can see no sufficient reason to doubt that the settled opinion of the Supreme Court of California, at least with reference to the time before the later statutes, is that the wife had a mere expectancy while living with her husband. The latest decision that we have seen dealing directly with the matter explicitly takes that view, says that it is a rule of property that has been settled for more than sixty years, and shows that Arnett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 55 L. Ed. 477, 36 L.R.A.,N.S., 1040, would, not be followed in that State. Roberts v. Wehmeyer, 191 Cal. 601, 611, 614, 218 P. 22."

only be assessed against the husband's interest as one-half of the estate.[4] Also, in 1917, sec. 172[5] of the Civil Code was amended as to restrictions on alienation of community personal property without the wife's signature, and sec. 172a[6] had been enacted, which, generally speaking, limited the right of the husband to alienate or encumber the community real property.

The opinion of the California Supreme Court in Stewart v. Stewart, 199 Cal. 318, 249 P. 197, held that these statutory changes did not affect the ownership of the husband in the community property. To the same effect see Talcott v. United States, 9 Cir., 23 F.2d 897, upon the points immediately under consideration. Therefore the expressions in Wardell v. Blum, supra, are no longer authority upon the question of ownership of the community property.

Still left for consideration is the question as to whether or not community property acquired between 1918 and July 29, 1927, the effective date of sec. 161a of the Civil Code, continued to be held in the ownership of the husband.

The legislature of California in 1923 amended sec. 1401 of the Civil Code (now Probate Code, sec. 201) to read: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse * * *."

In commenting upon this section, the California Supreme Court in Travelers' Ins. Co. v. Fancher, 219 Cal. 351, 26 P.2d 482, 483, said: "As appears from the decisions construing said amended section, two changes were brought about thereby: First, the wife was given the right, equal with that of the husband, to make testamentary disposition of the one-half of the community property to which she would be entitled if she survived the husband, a right which she did not before possess; and, secondly, it changed the rule of inheritance by substituting the surviving wife for the husband's descendants as successor to his half of the community property in case he made no disposition thereof up to the time of his death."

Again it was claimed that these amendments to the community property law wrought a change and vested one-half of the community property in the wife; but

---

[4] McKay v. Lauriston, 204 Cal. 557, 269 P. 519, calls special attention to the language of the California inheritance tax law and holds that this statute has nothing to do with the ownership of community property during the married life of the spouses.

[5] "§ 172. Management of community personal property: Limitations: Consent of wife. The husband has the management and control of the community personal property, with like absolute power of disposition, other than testamentary, as he has of his separate estate; provided, however, that he cannot make a gift of such community personal property, or dispose of the same without a valuable consideration, or sell, convey, or encumber the furniture, furnishings, or fittings of the home, or the clothing or wearing apparel of the wife or minor children that is community, without the written consent of the wife."

[6] "§ 172a. Management of community real property: Joinder of wife in conveyance: Presumption of validity: Action to avoid instrument: Limitations: The husband has the management and control of the community real property, but the wife, either personally or by duly authorized agent, must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; provided, however, that nothing herein contained shall be construed to apply to a lease, mortgage, conveyance, or transfer of real property or of any interest in real property between husband and wife; provided, also, however, that the sole lease, contract, mortgage or deed of the husband * * * to a lessee, purchaser or encumbrancer, in good faith without knowledge of the marriage relation shall be presumed to be valid. No action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of the husband alone, executed by the husband alone, shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate, and no action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of the husband alone, which was executed by the husband alone and filed for record prior to the time this act takes effect, in the recorder's office in the county in which the land is situate, shall be commenced after the expiration of one year from the date on which this act takes effect. * * *"

again the California courts held that the ownership was not affected, that the amendments were but rules of succession. Trimble v. Trimble, 219 Cal. 340, 26 P.2d 477; Travelers' Ins. Co. v. Fancher, supra. See notes 12 and 13, Vol. 3 Cal.Jur.Supp., Community Property, § 89, p. 596.

The effect of Civil Code sec. 161a has now to be taken into consideration, and there is no authoritative decision of the California courts as to the effect of this section upon the ownership of community property. However, there is the opinion of the Supreme Court in the case of United States v. Malcolm, 282 U.S. 792, 51 S. Ct. 184, 75 L.Ed. 714, upon that question in its answer to certain questions certified to it by this Court. To the question "Has the wife, under section 161a of the Civil Code of California, such an interest in the community income that she should separately report and pay tax on one-half of such income?" the Supreme Court answered in the affirmative, citing Poe v. Seaborn, supra, Goodell v. Koch, 282 U.S. 118, 51 S.Ct. 62, 75 L.Ed. 247, and Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L. Ed. 249.

Such answer could only have been based upon that court's opinion that the status of ownership in community property had been changed by sec. 161a and that, whereas prior to the effective date of such section of the Civil Code the ownership of the community property was solely in the husband, now since the effective date of such section the respective interests of the husband and wife in community property thereafter acquired during continuance of the marriage relation are present, existing and equal interests.

It follows, obviously, that the property which was the subject of the agreement, formerly owned solely by the husband, assumed by the terms of the agreement, the status of community property in which the wife had a "present, existing and equal interest" subject to the provisions of sections 172 and 172a of the California Civil Code. Words cannot make plainer the fact that by the operation of the terms and provisions of such agreement a grant of an ownership interest had taken place. But the grant was neither absolute nor unconditional; it reserved to the husband certain definite and valuable rights which the agreement provided should be measured by the terms of Civil Code sections 172 and 172a. These rights ceased with the grantor's death.

Accordingly, I believe that the grant of property ownership accomplished by the agreement falls within that class of transfers covered by sec. 302(c) of the Revenue Act. It was a grant of a property interest, incomplete, in that certain material and valuable rights in the property conveyed were not to be possessed or enjoyed by the wife until after the death of the grantor. Such a transfer is taxable. Klein v. United States, 283 U.S. 231, 234, 51 S.Ct. 398, 399, 75 L.Ed. 996; Chase National Bank v. United States, 278 U.S. 327, 335, 49 S. Ct. 126, 127, 73 L.Ed. 405, 63 A.L.R. 388; Reinecke v. Northern Trust Co., 278 U.S. 339, 345, 49 S.Ct. 123, 124, 73 L.Ed. 410, 66 A.L.R. 397; Title Insurance & Trust Co. v. Goodcell, 9 Cir., 60 F.2d 803; McCaughn v. Girard Trust Co., 3 Cir., 11 F.2d 520.

Furthermore, until the rights did cease, upon the death of the grantor, he was empowered to "alter" the corpus of the transferred property in several important particulars,—some without the consent of any one, and some only with the consent of the wife, the grantee. This fits in directly with the provision in subdivision (d) of sec. 302 which causes to be included those transfers "where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend or revoke * * *" the subject matter of the grant. Such a transfer is taxable. Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880; Holderness v. Commissioner, 4 Cir., 86 F.2d 137; Commissioner v. Chase National Bank, 2 Cir., 82 F.2d 157; Mead v. Welch, 13 F.Supp. 981, D.C.Cal.; Foster v. Commissioner, 31 B.T.A. 769. The fact that the power here was a limited one [cf., Beemer v. Roher, 137 Cal.App. 293, 30 P.2d 547; Smedberg v. Bevilockway, 7 Cal.App.2d 578, 46 P.2d 820; Note, 9 So.Calif.L.Rev. 400 (1936)] does not make the transfer the less taxable. Dort v. Helvering, 63 App.D.C. 98, 69 F.2d 836.

In the appellee's brief one of the subheads is as follows: "All proper claims against the deceased husband's estate are deductible in determining net estate for federal estate tax purposes." I understand that this point was to be considered by us

only in case of affirmance of the trial court's conclusion that but one-half of the estate should be subject to the federal estate tax. Since I believe that the case should be reversed, it is unnecessary to give the point further consideration.

Since the preparation of the above opinion, my attention has been called to the decision of the Board of Tax Appeals (Bigelow v. Commissioner, 38 B.T.A. 377, promulgated August 23, 1938) which takes the same view of the problems of this case that I do in this opinion.